### Steve CONNOLLY and Paul Adao, Plaintiff,

v.

### Woodrow T. HARRELSON, Defendant.

### No. Civ.A. 96–12522–WGY.

United States District Court,
D. Massachusetts.

Jan. 27, 1999.

---

Lee M. Berger, Berger & Markir, Buzzards Bay, MA, for Steve Connolly, Paul Adao, Plaintiffs.

Robert D. Keefe, S.T. Miller, Hale & Dorr, Boston, MA, Richard E. Noon, E. Robert Browne, Strouse & Noon, PC, Lowell, MA, for Woodrow T. Harrelson, Defendant.

## MEMORANDUM AND ORDER

YOUNG, District Judge.

This is an application for attorneys' fees under the Massachusetts Civil Rights Act, Mass. Gen. L. ch. 12, § 11I.

## I. BACKGROUND

The plaintiffs, Steve Connolly ("Connolly") and Paul Adao ("Adao"), brought a number of claims against the defendant, Woodrow T. Harrelson ("Harrelson"), including counts of assault and battery, intentional tort, and violations of the Massachusetts Civil Rights Act. The claims arose from an incident among the parties that occurred at the USAirways Terminal in West Tisbury, Martha's Vineyard, Massachusetts on October 8, 1995. At that time, the parties engaged in a tussle during which Harrelson damaged Connolly's camera, struck Adao's video camera, and appropriated Connolly's film. The Court directed a verdict in favor of Connolly and Adao as to liability on the assault and battery claim, while allowing the jury to determine damages. The jury also considered liability and damages for Connolly and Adao's claim under the Massachusetts Civil Rights Act. Following the jury's verdict, judgment was entered in the amount of $2,558.15 in favor of Connolly and $1.00 in favor of Adao.

## II. APPLICATION FOR FEES

On June 24, 1998, Connolly and Adao filed the instant application requesting $97,734.41 in attorneys' fees. In support of the Application, Lee M. Berger ("Berger"), Connolly and Adao's counsel, filed an affidavit detailing time spent working on the case by himself and Conni Lynn Baker ("Baker"), a paralegal in Berger's law firm. According to the affidavit, Berger devoted 355.70 hours to the case, while Baker contributed 74.70 hours. See Berger Aff., Exs. A, B. Berger's time, calculated at $200.00 per hour, comes to a total of $71,140.00; Baker's time, valued at $75.00 per hour, comes to a total of $5,602.50. See id. In addition, the affidavit contains a record of $3,206.91 in expenses incurred by counsel in pursuing Connolly and Adao's claim. See id.

Connolly and Adao argue that Berger's fees should be increased by twenty-five percent as a "lodestar" factor.[1] See Pl. Mem. at

---

**1.** While Connolly and Adao have chosen to refer to the requested multiplier as a "lodestar," to avoid confusion this Court will refer solely to a "fee enhancement." The term "lodestar" has in fact long been used to mean the product of an attorney's hours reasonably spent on litigation multiplied by a reasonable hourly rate for lawyers of comparable skill, reputation, and experi-

3. This enhanced fee is justified, in Connolly and Adao's view, because (a) Berger handled the case on a contingency basis and therefore assumed the risk of not receiving any compensation; (b) Berger has worked on the case for more than two and a half years without receiving compensation; (c) market billing rates in Boston, where the case was tried, for attorneys comparable in skill and experience to Berger are higher than the $200.00 hourly rate Berger has requested; and (d) the results obtained in the case were "excellent." Pl. Mot. at 2. Including this upward adjustment, the plaintiffs' total request for attorneys' fees and costs is $97,-734.41. *See id.* at 1.

Harrelson naturally opposes this enhancement of Berger's fees, arguing that such action is only justified under exceptional circumstances not present here. *See* Def. Mem. at 8. Moreover, for a variety of reasons, Harrelson contends that the entire fee request should be denied. First, Harrelson argues that the "nominal" amount of damages recovered in this case permits at best a "nominal fee award." *Id.* at 3. Second, Harrelson believes that awarding attorneys' fees in this case would "frustrate, rather than further, the purpose of the [Massachusetts Civil Rights Act]" inasmuch as "similar plaintiffs and their lawyers [would] tack on [a Massachusetts Civil Rights Act claim] to even the most routine claims . . . in the hope of recovering a large fee." *Id.* at 7. Finally, Harrelson takes the jury's award of only $1.00 in damages to Adao as an "implicit rejection of Adao's claims," *id.,* such that the Court should reduce any fee awarded to reflect Berger's lack of success with Adao's claims.

## III. LODESTAR CALCULATIONS

 In determining attorneys' fees awards under the Massachusetts Civil Rights Act, this Court is obligated to make an independent assessment of what constitutes a "reasonable" award:

Any aggrieved person . . . who prevail[s] in an action authorized by this section shall be entitled to an award of the costs of the litigation and reasonable attorneys' fees in an amount to be fixed by the court.

Mass. Gen. L. ch. 12, § 11I; *accord Fontaine v. Ebtec Corp.,* 415 Mass. 309, 324, 613 N.E.2d 881, 890 (1993) ("The amount of a reasonable attorney's fee, awarded on the basis of statutory authority . . . . is largely discretionary with the judge, who is in the best position to determine how much time was reasonably spent on a case, and the fair value of the attorney's services."). The starting point for such an analysis is the now-familiar "lode-star" calculation. *See Stowe v. Bologna,* 417 Mass. 199, 203, 629 N.E.2d 304, 307 (1994) ("The basic measure of reasonable attorney's fees is a 'fair market rate for the time reasonably spent preparing and litigating a case.' ") (quoting *Fontaine,* 415 Mass. at 326, 613 N.E.2d at 891).

 "Fair market rate" is the "reasonable hourly rate of compensation prevailing in the relevant community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *McLaughlin,* 976 F.Supp. at 60. Berger's affidavit asserts that his usual and customary hourly rate for legal services is $200.00 per hour. *See* Berger Aff. at 1. This figure lies within the range of rates for attorneys with his experience in Southeastern Massachusetts, which Berger reckons to be between $175.00 and $250.00 per hour.[2] *See id.* As pointed out in Berger's affidavit, the hourly rate of $200.00 for an attorney with over twenty-five years of membership in the Massachusetts Bar Association is likely to be on the thrifty side of rates for comparable attorneys in Boston, the place where litigation occurred. *See id.; see also Guckenberger v. Boston Univ.,* 8 F.Supp.2d 91, 105 (D.Mass. 1998) (Saris, J.) (finding rates for "partners in trial firms with experience in civil rights cases [to be] between $200 and $275 per

---

ence in the relevant community. *See McLaughlin v. Boston Sch. Committee,* 976 F.Supp. 53, 60 n. 10 (D.Mass.1997) (Garrity, J.) (providing an historical account of the term's development). The "lodestar" figure is itself subject to adjustment, upward or downward, in light of other relevant factors such as the level of success obtained. *See Morgan v. Gittens,* 915 F.Supp. 457, 469 (D.Mass.1996) (Garrity, J.).

**2.** Harrelson has not challenged these figures.

hour" and noting that "[r]ates in excess of $300 per hour for Boston trial attorneys ... have been approved in this District"). In light of these comparisons, the Court, like Harrelson, sees no reason to challenge Connolly and Adao's proffered figure of $200.00 per hour for Berger's counsel.

■ With respect to hours billed, "[t]he judge should begin his inquiry with the amount of time documented by the plaintiff's attorney." *Stowe*, 417 Mass. at 203, 629 N.E.2d at 307. Berger provides in his affidavit a log detailing 355.70 hours of his own time, as well as 74.70 hours of Baker's time. *See* Berger Aff., Exs. A, B. Of this time, the Court must determine whether any was unreasonably expended.

■ It has become established practice in this Circuit to distinguish between "core" and "non-core" work when determining attorneys' fees awards. *See Brewster v. Dukakis*, 3 F.3d 488, 492 n. 4 (1st Cir.1993) ("Core work includes legal research, writing of legal documents, court appearances, negotiations with opposing counsel, monitoring, and implementation of court orders. Non-core work consists of less demanding tasks, including letter writing and telephone conversations."). Typically, non-core work is compensated at two-thirds of the hourly rate for core work. *See Morgan*, 915 F.Supp. at 471 (applying a "rough 3/2 ratio" for core versus non-core work).

■ A review of Massachusetts case law under the state Civil Rights Act and other attorneys' fee-shifting statutes, however, indicates that the Commonwealth does not follow this practice. "Where a request for attorneys' fees comprises a substantive part of the state-law remedy for a state-law cause of action, the proper rule of decision governing the award is derived from Massachusetts, rather than federal, practice." *Krewson v. City of Quincy*, 74 F.3d 15, 17 (1st Cir.1996). In light of this obligation, the Court will not impose upon Massachusetts practice a relatively recent federal court innovation, but will instead calculate the lodestar using an undiluted hourly rate for both core and non-core work. "This interpretation is consistent with the liberal construction which should be

afforded civil rights statutes. . . ." *Batchelder v. Allied Stores Corp.*, 393 Mass. 819, 823, 473 N.E.2d 1128, 1131 (1985); *accord Krewson*, 74 F.3d at 18 ("[A]s a remedial civil rights statute, § 11I is entitled to a more liberal construction of its terms than other fee shifting statutes such as Mass. Gen. L. ch. 93A.").

After careful review of Berger and Baker's time logs, this Court, again like Harrelson, finds no reason to second-guess their submissions.

## IV. FEE REDUCTION OR DENIAL

Harrelson raises three challenges to the award of attorneys' fees, each of which will be discussed in turn.

### A. RESULTS OBTAINED

■ First, Harrelson argues that the amount of damages actually recovered in this case does not merit awarding anything beyond "nominal fees." Def. Mem. at 6. Under federal fee-shifting statutes, the degree of success obtained is generally cited as the most important factor in determining reasonable fees. *See, e.g., Hensley v. Eckerhart*, 461 U.S. 424, 436, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983) ("[T]he most critical factor is the degree of success obtained."). It is important to note, however, that money is not the sole, or even the most important, measure of success. *See, e.g., City of Riverside v. Rivera*, 477 U.S. 561, 576, 106 S.Ct. 2686, 91 L.Ed.2d 466 (1986) ("[R]easonable attorney's fees ... are not conditioned upon and need not be proportionate to an award of money damages."); *Lewis v. Kendrick*, 944 F.2d 949, 957 (1st Cir.1991) ("[T]he fee is not limited by the size of the recovery, but may, in appropriate instances, greatly exceed it."). For this reason, the relatively modest amount of damages received by Connolly and Adao in this case should not, standing alone, bar them from receiving attorneys' fees.

■ While these federal cases are instructive, the view of the Massachusetts courts is controlling: "[W]here Massachusetts courts have reviewed fee awards pursuant to remedial statutes, they have held that an award of reasonable attorneys' fees should not be re-

duced to reflect the actual amount of the jury award." *Krewson*, 74 F.3d at 18 (collecting cases). Because the Massachusetts Civil Rights Act is precisely such a remedial statute, the Court refuses to trim the fee award based solely on the dollar value of the recovery by Connolly and Adao.

## B. PURPOSE OF THE MASSACHU-SETTS CIVIL RIGHTS ACT

■ Harrelson contends that an award of attorneys' fees in this case would encourage spurious litigation and "lead to the creation of a 'vast constitutional tort' which the courts have been vigorously avoiding since the enactment of the [Massachusetts Civil Rights Act]." Def. Mem. at 7 (quoting *Bally v. Northeastern Univ.*, 403 Mass. 713, 718, 532 N.E.2d 49, 52 [1989] ). In its proper context, however, the language of the Massachusetts Supreme Judicial Court reveals a more narrow concern:

> We have also recognized that, by reaching private party actions, the Legislature did not intend to create "a vast constitutional tort," and thus explicitly limited the Civil Rights Act's remedy to situations where the derogation of secured rights occurs by threats, intimidation or coercion.

*Bally*, 403 Mass. at 718, 532 N.E.2d at 52 (citing *Bell v. Mazza*, 394 Mass. 176, 182–183, 474 N.E.2d 1111, 1115 [1985] ). Thus, the Massachusetts Legislature has already provided the stopgap needed to prevent Harrelson's feared onslaught of frivolous claims: a requirement that the aggrieved person's rights be abridged by "threats, intimidation or coercion." Mass. Gen. L. ch. 12, § 11H. In this case, Harrelson's actions met that standard. The statute therefore requires that Connolly and Adao be awarded "reasonable attorneys' fees," Mass. Gen. L. ch. 12, § 11I, regardless of the purported effect the recovery may have on other litigants.

## C. IMPLICIT REJECTION OF ADAO'S CLAIMS

■ Finally, Harrelson contends that the requested fee should be discounted "to reflect the jury's implicit rejection of Adao's claims." Def. Mem. at 7. While it is true that the jury awarded Adao the nominal amount of $1.00 for his claims, that does not alter the fact that Adao succeeded as matter of law. As noted above, the monetary magnitude of the litigation result does not determine its "success" for purposes of the attorneys' fee calculation. Thus, the short answer to Harrelson's argument is that, irrespective of the jury's determination of Adao's damages, he is still a "prevailing" plaintiff for purposes of the fee-shifting statute. *See Batchelder*, 393 Mass. at 822, 473 N.E.2d at 1130 ("[A] party prevails under G.L. c. 12, § 11I when he or she achieves success on a substantial question of law arising out of a common nucleus of facts that gives rise to a cause of action under the statute.") (citation omitted).

■ Even if one does view Adao's claims as unsuccessful, however, that would not necessarily mean that Connolly and Adao's recoverable attorneys' fees would be reduced. Counsel's time spent pursuing unsuccessful claims is generally non-compensable "unless it can be shown that the [unsuccessful and successful] claims were interconnected." *Krewson*, 74 F.3d at 19. The requisite degree of interconnection can be found when the "claims include[ ] a 'common core of facts' or were 'based on related legal theories.' " *Lipsett v. Blanco*, 975 F.2d 934, 940 (1st Cir.1992). Under those criteria, Connolly and Adao's claims were not only interconnected, they were virtually identical. Because each claim arose out of the same cluster of facts, Berger's investigatory work entailed no additional effort on account of the number of plaintiffs. Moreover, proving Connolly's claim necessitated a review of the same constellation of facts with or without Adao's inclusion in the litigation. Similarly, because each claim rested on the same legal theories, the number of compensable hours spent researching and drafting court documents would be influenced little by barring Adao's "unsuccessful" claims. Finally, the Court notes that where, as here, it would be an exercise in futility to attempt an allocation of time between successful and unsuccessful claims, "it becomes the fee-target's burden to show a basis for segregability." *Id.* at 941. Harrelson's bare request that the Court "discount the

requested fees" does not sustain that burden. Def. Mem. at 7.

## V. FEE ENHANCEMENT

■ While Harrelson unsuccessfully contends that the attorneys' fees award should be denied or reduced, Connolly and Adao argue, also without success, that the award should be enhanced. The practice of multiplying the lodestar figure by an enhancement factor is seldom entertained in this Circuit. *See, e.g., Lipsett,* 975 F.2d at 942 ("[W]e have repeatedly cautioned that such enhancements will be rare. The exception is a tiny one—and we will not permit it to eclipse the rule.") (citations omitted); *McLaughlin,* 976 F.Supp. at 63 ("[Plaintiff's counsel] has not submitted specific evidence which would overcome the strong presumption that the lodestar represents a reasonable fee."). The Commonwealth of Massachusetts shares this view of the limited appropriateness of fee enhancements. *See Stowe,* 417 Mass. at 203, 629 N.E.2d at 307 ("The basic measure amount, as determined by the judge, should be the amount of the award unless there are special reasons to depart from it.") (citation omitted).

■ The instant case presents no reason to depart from the strong presumption that a lodestar calculation fully compensates Connolly and Adao for the objective worth of Berger's legal services. Regardless of whether Berger did provide "quality representation," Pl. Mem. at 3, this Court must look further for justification to enhance his fee. "In short, the lodestar figure includes most, if not all, of the relevant factors constituting a 'reasonable' attorney's fee, and it is unnecessary to enhance the fee for superior performance in order to serve the statutory purpose of enabling plaintiffs to secure legal assistance." *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air,* 478 U.S. 546, 566, 106 S.Ct. 3088, 92 L.Ed.2d 439 (1986).[3] Moreover, although Berger did assume the risk of nonpayment, the Supreme Judicial Court of Massachusetts has noted that this factor alone is insufficient to justify enhancement. *See Fontaine,* 415 Mass. at 324, 613 N.E.2d at 890 ("In *limited* circumstances, statutory fee awards may be enhanced to compensate for the risk of nonpayment.") (emphasis added).[4] Similarly, the fact that Berger has experienced a delay in payment would only be relevant, if at all, in combination with other more compelling factors.[5]

There are no special factors present in this case. The issues in this litigation have been far from complex, involving largely undisputed facts and a rather unimpressive question of the law of intentional torts. Also, as Harrelson points out strenuously, the recovery obtained by Connolly and Adao was, in light of their original demands, relatively modest. Finally, the Court notes that the social dimension of this case bears little resemblance to the public interest concerns which drove the original enactment of the Massachusetts Civil Rights Act. *See Batchelder,* 393 Mass. at 821, 473 N.E.2d at 1130 (explaining that the legislative purpose of Mass. Gen. L. ch. 12, § 11I, was "to respond to a need for civil rights protection under State law" with particular attention to the "serious problem of racial harassment"). Although the First Amendment rights of photo-journalists are implicated peripherally by this litigation, that issue remains on the margins of what is essentially a tort case in the storied but straightforward tradition of *Vosburg v. Putney,* 80 Wis. 523, 50 N.W. 403 (1891).

"The statutory provision for attorney's fees aims to attract competent legal counsel for those with meritorious claims. It is not designed to provide a windfall recovery of

---

3. Indeed, it has even been said "that adjustments are *not* to be given in reward for *stellar* performance." *Hall v. Ochs,* 817 F.2d 920, 929 (1st Cir.1987) (emphasis added).

4. The federal treatment of contingency representation as a justification for enhancement is even more restrictive. *See Lipsett,* 975 F.2d at 943 (holding that, under the federal Fees Act, "when a prevailing party seeks an attorneys' fee award

in a civil rights case ..., enhancement of the lodestar because of counsel's risk of nonpayment is not permitted").

5. Regardless, awarding fees based upon current billing rates, as the Court does in this case, is one accepted means of compensating for a delay in payment. *See Missouri v. Jenkins,* 491 U.S. 274, 283–84, 109 S.Ct. 2463, 105 L.Ed.2d 229 (1989).

fees." *Fontaine*, 415 Mass. at 326, 613 N.E.2d at 892 (discussing analogous attorneys' fees provision in state anti-age discrimination statute) (citation omitted). In a case such as this, where the plaintiffs obtain modest damages for a simple tort that bears little significance for anyone beyond the parties at bar, the statutory purpose of the Massachusetts Civil Rights Act is adequately satisfied by awarding attorneys' fees based on the lodestar method, without enhancement.

## VI. ORDER

In accordance with the foregoing discussion, this Court hereby ORDERS Harrelson to pay Connolly and Adao the following assessment of reasonable attorneys' fees pursuant to Mass. Gen. L. ch. 12, § 11I: attorneys' fees of $79,949.41, representing the total requested by Connolly and Adao less $17,785.00 attributable to the disallowed fee enhancement.

SO ORDERED.