Zeke **WILSON and Wilson Promotional Group, Inc., Plaintiffs,**

v.

**Wilbert J. McCLURE, William F. Pender, and Nicholas P. Manzello, Defendants.**

**Civ.A. No. 98–12299–WGY.**

United States District Court, D. Massachusetts.

Jan. 30, 2001.

Mitchell A. Kramer, Kramer & Friedman, Rydal, PA, pro se.

Harvey A. Schwartz, Rodgers, Powers & Schwartz, Boston, MA, pro se.

L. Seth Stadfeld, Weston Patrick Willard & Redding, Boston, MA, pro se.

### MEMORANDUM AND ORDER

YOUNG, Chief Judge.

This is an application for attorneys' fees pursuant to 42 U.S.C. § 1988.

### I. Background

The plaintiffs Zeke Wilson and Wilson Promotional Group, Inc. (collectively "Wilson") commenced suit pursuant to 42 U.S.C. § 1983 against the defendants Wilbert J. McClure ("McClure"), William F. Pender ("Pender"), and Nicholas P. Manzello ("Manzello"), alleging that McClure, Pender, and Manzello had engaged in racial discrimination in violation of the Equal Protection Clause of the Fourteenth Amendment. On May 31, 2000, this Court granted summary judgment to Manzello, leaving Wilson to proceed against McClure and Pender. A jury awarded compensatory damages of $80,000 against McClure and Pender jointly and severally, adding punitive damages of $20,000 against McClure and $60,000 against Pender.

### II. Application for Fees

On September 27, 2000, Wilson filed an application for an award of attorneys' fees and costs. In support of this application, Harvey A. Schwartz ("Schwartz"), Wilson's lead counsel at trial, filed an affidavit that detailed the time he and his co-counsel, Kimberly Scheckner ("Scheckner") and Carly Massey ("Massey"), worked on the case and their experience and qualifications. Included as exhibits to his affidavit were an excerpt from the *Massachusetts Lawyers Weekly* from April 24, 2000 that contained a listing of the law firms reporting hourly rates and those rates, Schwartz Aff. Ex. B, as well as a summary of attorneys' fees awarded recently in the Boston courts (federal and state), *Id.* Ex. C.

According to Schwartz's affidavit, Schwartz worked a total of 206.47 hours on the case, yet sought compensation for but 194.37 hours. Scheckner worked a total of 81.59 hours on the case, and Massey worked a total of 6.57 hours. *Id.* ¶ 8. Schwartz then submitted a supplementary affidavit documenting 8 additional hours of work. Schwartz's original affidavit indicated that Schwartz's hourly rate should be valued at $330, Scheckner's at $190, and Massey's at $70. The total requested fees came to $82,777.49. Schwartz's affidavit, as supplemented on October 4, 2000, also

contained a record of $566.20 in expenses incurred by counsel during and in preparation for trial.

On October 4, 2000, Wilson submitted Plaintiff's Supplementary Motion for Award of Attorneys Fees and Costs. In support of this motion, Marc S. Alpert ("Alpert") submitted an affidavit that explained his pre-trial involvement in this matter and his experience with civil rights litigation, and summarized the hours he worked on the case. Alpert Aff. at 1–2. According to Alpert's affidavit, he worked a total of 78.33 hours on this case. *Id.* at 7. Alpert indicated that his work should regularly be valued at $250 per hour, and, in this case, enhanced to $500 per hour because of the "risk involved at the time the case was commenced that the case would fail, and there would be no fee and no reimbursement of costs and expenses advanced." *Id.* at 5, 7. Alpert also requested $1330.04 for "out-of-pocket expenses or cash advanced." *Id.* at 7.

McClure and Pender oppose Wilson's motion on four grounds: (1) the excessiveness of the requested hourly rates of Schwartz, Scheckner, Massey, and Alpert; (2) failure to distinguish between core and non-core services; (3) Alpert's poor record keeping; and (4) Alpert's request for a fee enhancement. Defs.' Opp'n at 3.

## III. Analysis

Under 42 U.S.C. § 1988, "the court, in its discretion, may allow the prevailing party [in a civil rights action under § 1983] ... a reasonable attorney's fee as part of the costs," 42 U.S.C. § 1988(b), to which the prevailing party is normally entitled under Fed.R.Civ.P. 54(d)(1). McClure and Pender do not dispute that Wilson is the prevailing party. Defs.' Opp'n at 2–3.

■ The lodestar method is the "strongly preferred" method by which district courts should calculate the fees to award prevailing parties under § 1988. *Coutin v. Young & Rubicam P. R., Inc.*, 124 F.3d 331, 337 (1st Cir.1997) (citing *Lipsett v. Blanco*, 975 F.2d 934, 937 [1st Cir.1992]); *Grendel's Den, Inc. v. Larkin*, 749 F.2d 945, 950 (1st Cir.1984). The lodestar method requires the district court to multiply the number of hours "reasonably expended on the litigation" by a "reasonable hourly rate." *Coutin*, 124 F.3d at 337 (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 [1983]); *Grendel's Den*, 749 F.2d at 950.

■ "To determine the number of hours reasonably spent, one must first determine the number of hours actually spent and then subtract from that figure hours which were duplicative, unproductive, excessive, or otherwise unnecessary." *Grendel's Den*, 749 F.2d at 950. To determine a reasonable hourly rate, the district court should consider "prevailing rates in the community for comparably qualified attorneys," *Lipsett*, 975 F.2d at 937 (quoting *United States v. Metro. Dist. Comm'n*, 847 F.2d 12, 19 [1st Cir.1988]), that is, "those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation," *Grendel's Den*, 749 F.2d at 955 (quoting *Blum v. Stenson*, 465 U.S. 886, 896, 104 S.Ct. 1541, 79 L.Ed.2d 891 [1984]). The court must also consider other factors such as the type of work performed, who performed it, and the skill required to perform it. *Id.* at 950–51. Once the lodestar calculation is made, it serves presumptively as a reasonable fee unless subject to an upward or downward adjustment. *Lipsett*, 975 F.2d at 937.

### A. Schwartz, Scheckner, and Massey

### 1. Calculating the Lodestar

#### (a) Reasonable Hours Expended

■ McClure and Pender argue both that the time entries that Schwartz sub-

mitted were so vague as to make it impossible to tell if they included duplicative or unnecessary time entries and that what is discernable from the entries evidences inefficiencies such as redundancies and overly-abundant time spent preparing proposed jury instructions. Defs.' Opp'n at 16–17.

The Court is not persuaded by McClure's and Pender's arguments. The entries provided in Schwartz's affidavit are sufficiently descriptive for the Court to determine what tasks were being performed and whether to categorize them as "core" or "non-core" work, as explained below. The entries reflect little duplication of efforts, which, when encountered (e.g., co-counsel interactions or review of co-counsel documents), the Court has treated as non-core work. Moreover, the Court is not inclined to analyze Schwartz's logged hours in an effort to weed out each hour spent on unsuccessful efforts. Indeed, the mere fact that a particular product (such as jury instructions) was not used ultimately for its assigned task does not necessarily imply that its development was not helpful to counsel in addressing other aspects of the case. See Guckenberger v. Boston Univ., 8 F.Supp.2d 91, 102 (D.Mass.1998) (Saris, J.) (declining generally to parse out hours spent on unsuccessful claims). Thus, the Court did not delete any hours submitted to it in Schwartz's affidavit in calculating the lodestar.

#### (b) Hourly Rates

▮ Although the hours submitted by Schwartz are reasonable, the Court is less persuaded by Schwartz's proposed hourly rates. Schwartz offers little to assist the Court in determining the prevailing market rate in Boston for experienced civil rights attorneys, associates, and law clerks. Schwartz's submission from *Massachusetts Lawyers Weekly*, which reports hourly rates from Boston law firms, does not inform the Court as to the prevailing market rate for lawyers offering services similar to those provided by Schwartz, Scheckner, Massey, or Alpert. *See Guckenberger*, 8 F.Supp.2d at 105. Thus, the Court, in an effort to maintain a modicum of consistency with other awards of attorneys' fees within this district, takes into account attorneys' fee petitions previously encountered within this district.

This Court recognizes that Schwartz is a highly skilled civil rights attorney with years of experience and is quite prominent within the Boston legal community. Schwartz's request for an hourly rate of $330, however, is too steep. Although some large Boston law firms might charge this amount, as indicated by the report from the *Massachusetts Lawyers Weekly*, such figures simply do not speak to whether those lawyers provide similar services to their clients. This Court therefore holds that a fee of $250 is a reasonable hourly rate for a civil rights attorney of Schwartz's outstanding quality.[1] *See, e.g., Alfonso v. Aufiero*, 66 F.Supp.2d 183, 197 (D.Mass.1999) (Saris, J.) (holding that $250 is a typical hourly rate for a senior private civil rights trial attorney in Boston); *Zurakowski v. D'Oyley*, 46 F.Supp.2d 87, 89 n. 2 (D.Mass.1999) (holding that hourly rate of $240 was reasonable where counsel was "foremost practitioner" in civil rights but noting that this rate "Ought not be taken as some emerging Massachusetts standard"); *Connolly v. Harrelson*, 33 F.Supp.2d 92, 95–96 (D.Mass.) (approving hourly rate of $200 in civil rights case for attorney with twenty-five years of experience), *aff'd*, 201 F.3d 426, 1999 WL 699906

---

1. Indeed, this is consistent with an affidavit submitted by Schwartz in *Guckenberger* that indicated that the "rates for senior private civil rights trial attorneys typically fall around $250 per hour." *Guckenberger*, 8 F.Supp.2d at 105 (citing H. Schwartz Aff. ¶¶ 8 & 11).

(1st Cir.1999); *McLaughlin ex rel. McLaughlin v. Boston Sch. Comm.*, 976 F.Supp. 53, 62 (D.Mass.1997) (Garrity, J.) (holding $200 hourly rate reasonable in civil rights action).[2] Moreover, this is the highest amount that any other court has awarded Schwartz in previous litigation. Schwartz Aff. ¶ 13 (describing court awarded hourly rates ranging from $200 in 1987 to $250 in 1996). Thus, the Court awards Schwartz at a $250 hourly rate.

With respect to Scheckner and Massey, this Court has little information from which to determine hourly rates. Within the law firm of Rodgers, Powers & Schwartz, Scheckner bills at $190 per hour and Massey bills at $75 per hour. *Id.* ¶¶ 14–15. Moreover, the information provided by Schwartz informs the Court that among Boston firms, the associate hourly rate ranges from $75 per hour to $310 per hour. *Id.* Ex. B.

The requested rates of $190 and $70 per hour appear too steep for the services of a third-year associate and a law student. Indeed, other courts within this district have awarded lower fees to similarly qualified individuals. *E.g., Alfonso*, 66 F.Supp.2d at 197 (awarding hourly rate of $130 to associate); *Guckenberger*, 8 F.Supp.2d at 107–08 (approving hourly rate of $140 for junior attorney and hourly rate of $60 for law clerks and paralegals);

*Murray v. Shaw Indus., Inc.*, 990 F.Supp. 46, 48 (D.Mass.1997) (approving hourly rate of $125 to $140 for associate counsel). Accordingly, this Court reduces Scheckner's rate to $120 and Massey's rate to $60 per hour.

██ The Court also reduces the attorneys' hourly rates based on the type of work performed. "It has become established practice in this Circuit to distinguish between 'core' and 'non-core' work when determining attorneys' fees awards." *Connolly*, 33 F.Supp.2d at 96 (citing *Brewster v. Dukakis*, 3 F.3d 488, 492 n. 4 [1st Cir.1993] ). "[C]ore work includes legal research, writing of legal documents, court appearances, negotiations with opposing counsel, monitoring, and implementation of court orders. Non-core work consists of less demanding tasks, including letter writing and telephone conversations." *Brewster*, 3 F.3d at 492 n. 4. Non-core work also includes conferences with co-counsel. *Alfonso*, 66 F.Supp.2d at 196 (quoting *McLaughlin*, 976 F.Supp. at 62). Moreover, non-core work includes time spent preparing a motion for attorneys' fees because such time usually involves little more than documentation of what the lawyer has done.[3] *Id.* (citing *Brewster*, 3 F.3d at 494). Usually, non-core work is compensated at two-thirds of the particular lawyer's hourly rate for core work. *Connolly*, 33

---

**2.** The Court is well aware of higher rates awarded by other judges within this district as is demonstrated by the cases provided by Schwartz in his affidavit. *See also United Cos. Lending Corp. v. Sargeant*, 32 F.Supp.2d 21, 23 (D.Mass.1999) (approving rates as high as $300 in context of class action where defendant did not dispute rate); *Guckenberger*, 8 F.Supp.2d at 106 (holding hourly rate of $325 to be reasonable for prominent civil rights attorneys); *Morgan v. Gittens*, 915 F.Supp. 457, 460, 472 (D.Mass.1996) (Garrity, J.) (holding hourly rate of $300 to be reasonable for prominent civil rights attorney). Indeed, this Court has previously commented on the

wide disparity of attorneys' fees awarded within this district. *See Ciulla v. Rigny*, 89 F.Supp.2d 97, 104 n. 8 (D.Mass.2000) (detailing range of attorneys' fees recently awarded in this district and calling for reliable reporter of Massachusetts attorneys' fee awards to assist in predictability and reasonable uniformity).

**3.** In this instance, the Court treated 90% of the time Schwartz spent working on the fee application as non-core time and 10% as core time to account for legal research performed concerning fee applications.

F.Supp.2d at 96 (citing *Morgan v. Gittens*, 915 F.Supp. 457, 471 [D. Mass.1996] [Garrity, J.] ).

Where an attorney has failed to delineate within a particular entry what work is core work and what work is non-core work, this Court has distributed the recorded hours evenly among each task within a particular entry. *Cf. Alfonso*, 66 F.Supp.2d at 197 (treating mixed entries as one-half core and one-half non-core); *Guckenberger*, 8 F.Supp.2d at 102 (same). For example, if an attorney spent 12.0 hours on four tasks, three of which were core work and one of which was non-core work, and the attorney did not allocate her time among the tasks, this Court would designate 9.0 hours as core hours and 3.0 hours as non-core hours.

#### 2. Adjusting the Lodestar

 Schwartz, Scheckner, and Massey are not seeking an adjustment of the lodestar calculation, nor does this Court find any special circumstances in this case that warrant adjusting the lodestar. *See Connolly*, 33 F.Supp.2d at 98 ("In short, the lodestar figure includes most, if not all, of the relevant factors constituting a 'reasonable' attorney's fee, and it is unnecessary to enhance the fee for superior performance in order to serve the statutory purpose of enabling plaintiffs to secure legal assistance." [quoting *Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 566, 106 S.Ct. 3088, 92 L.Ed.2d 439 (1986) ] ).

#### 3. Costs

 This Court may also award reasonable and necessary attorneys' costs. *Alfonso*, 66 F.Supp.2d at 201 (citing *Culebras Enters. Corp. v. Rivera–Rios*, 846 F.2d 94, 103 [1st Cir.1988] ). McClure and Pender do not dispute this, and this Court holds that the costs incurred by Schwartz

were necessary and reasonable and hence Schwartz is entitled to compensation for them.

### B. Alpert

Alpert assisted Wilson in this case until his withdrawal following the Court's denial of a motion to dismiss the matter. Alpert specifically describes his role in this case as "t[aking] the case from likely-loser status to a viable case." Alpert Aff. at 2. Alpert now seeks compensation for the hours spent on the matter.

#### 1. Lodestar Calculation

##### (a) Reasonable Hours Expended

 As of 1994, with the First Circuit's holding in *Grendel's Den*, "in cases involving fee applications for services rendered after the date of this opinion, the absence of detailed contemporaneous time records, except in extraordinary circumstances, will call for a substantial reduction in any award or, in egregious cases, disallowance." *Grendel's Den*, 749 F.2d at 952. Alpert admits that he "did not make appropriate contemporaneous recordings of time" except for the period from September 8, 1999 to October 12, 1999. Alpert Aff. at 5–7. Even those time entries that Alpert avers are contemporaneous merely indicate the number of hours spent and do not even attempt to delineate what tasks were performed. *Id.* at 8. In lieu of such records, Alpert asks this Court to pay credence to times "tracked by a computer program that kept track of the time spent editing files." *Id.* at 5.

Although the Court could in its discretion, as McClure and Pender urge, disallow Alpert's fee award altogether under these circumstances, the Court instead sees fit drastically to reduce the hours Alpert offers in order to reflect the strict minimum amount of time it would take one to perform the work actually performed by Al-

pert. *See Rolland v. Cellucci,* 106 F.Supp.2d 128, 135 (D.Mass.2000) (Neiman, M.J.) (cutting time logged in half because paralegal failed to keep precise and contemporaneous time records); *McLaughlin,* 976 F.Supp. at 72 (considering work performed rather than hours logged). In so doing, the Court adopts the times McClure and Pender propose as accurately reflecting the work Alpert performed. *See* Defs.' Opp'n at 18 n. 20. Thus, Alpert will be awarded for 20.0 hours of core time and 5.0 hours of non-core time, which reflects less than a fifty percent reduction of the times Alpert actually contemporaneously recorded and a sixty-eight percent reduction of the total amount of time Alpert claims to be an accurate reflection of the amount of time he actually worked.

### (b) Hourly Rates

██ Alpert has not provided the Court with much information regarding his experience and skills. Alpert did, however, indicate that he has been practicing law since at least 1983 and describes his practice as "primarily litigation." Alpert Aff. at 1. Alpert also indicated that prior to working on Wilson's case he lacked experience in civil rights matters. *Id.*

Based on his skill and experience, the Court deems Alpert's request of a $250 hourly rate to be far too steep, especially in light of his lack of experience and skill in handling Wilson's case. *See id.* at 1, 7. Accordingly, this Court assigns an hourly rate of $120 to Alpert's core work and $80 to his non-core work. *See Ciulla,* 89 F.Supp.2d at 104; *Connolly,* 33 F.Supp.2d at 96.

### 2. Adjusting the Lodestar

██ Alpert seeks to double his fee to account for the risk that the case could have failed. The First Circuit has clearly indicated that "such enhancements will be

rare." *Lipsett,* 975 F.2d at 942. Alpert's involvement in this case is a far cry from the exceptional circumstances that could possibly give rise to an upward adjustment of a lodestar calculation. Indeed, although it is true that Alpert assisted Wilson in the early preparation of his case, Alpert voluntarily withdrew following a motion to dismiss, leaving Wilson to represent himself before the Court on summary judgment. Alpert Aff. at 2. This Court will not reward Alpert's behavior by enhancing his hourly rate.

### 3. Costs

██ In reviewing Alpert's reported costs, the Court reduces Alpert's request for $1,330.04 to $884.10. This reduction reflects the Court's disallowance of unnecessary and non-compensable travel and lodging expenses associated with Phippen's and Cappiello's deposition, as well as costs derived from telephone bills and courier use. *See, e.g., In re Fidelity/Micron Sec. Litig.,* 167 F.3d 735, 739 (1st Cir.1999) (courier fees and travel expenses are typically not included among costs); *see also* 28 U.S.C. § 1920 (indicating items court may typically award as costs). Thus, the Court holds that Alpert is entitled to his filing fee as well as costs directly incident to the depositions used at trial.

### C. Summary of Attorneys' Awards

Based on the foregoing reasoning and its resultant calculations, the Court holds that Schwartz, Scheckner, and Massey are entitled to $58,195.41 for attorneys' fees and $566.20 for costs, resulting in a total award of $58,761.61. *See* Appendix, tbl.1. Alpert is entitled to $2,800.00 for attorneys' fees and $844.10 for costs, resulting in a total award of $3,644.10. *id.* tbl.2. Thus, insofar as indicated, Wilson's Motion for Award of Attorneys' Fees and Costs

[Docket no. 91] and Supplementary Motion [Docket no. 92] is GRANTED.
for Award of Attorneys' Fees and Costs

## APPENDIX
### Table 1. Schwartz's, Scheckner's, and Massey's Fees and Costs

| | Core vs. Non-core | Hours | Rate | Subtotal |
|----------|---------|--------|-------|-----------|
| Schwartz | Core | 175.94 | $250 | $43,985.00 |
| | Non-core | 26.43 | $167 | $ 4,413.81 |
| Scheckner | Core | 71.88 | $120 | $ 8,625.60 |
| | Non-core | 9.71 | $ 80 | $ 776.80 |
| Massey | Core | 6.57 | $ 60 | $ 394.20 |
| | Non-core | 0.00 | $ 40 | $ 0.00 |
| | | | **TOTAL FEES** | $58,195.41 |
| | | | Costs | $ 566.20 |
| | | | **TOTAL** | $58,761.61 |

### Table 2. Alpert's Fees and Costs

| | Core vs. Non-core | Hours | Rate | Subtotal |
|--------|---------|-------|-------|-----------|
| Alpert | Core | 20 | $120 | $ 2,400.00 |
| | Non-core | 5 | $ 80 | $ 400.00 |
| | | | **TOTAL FEES** | $ 2,800.00 |
| | | | Costs | $ 844.10 |
| | | | **TOTAL** | $ 3,644.10 |