**UNITED COMPANIES LENDING CORPORATION, Plaintiff,**

v.

**Daisy F. SARGEANT, Individually and on behalf of all persons similarly situated, Defendants.**

No. Civ.A. 96–12538–WGY.

United States District Court, D. Massachusetts.

Jan. 4, 1999.

Steven E. Snow, Partridge, Snow & Hahn, Providence, RI, for United Companies Lending Corporation, plaintiff.

Andrew Troop, Gordon M. Jones, III, Hutchins, Wheeler & Dittmar, Boston, MA, for Daisy F. Sargeant, defendant.

Jeffrey D. Clements, Office of the Attorney General, Pamela Kogut, Assistant Attorneys General, Consumer Protection and Antitrust Div., Boston, MA, for Commonwealth of Massachusetts, interested party.

Andrew Troop, Gordon M. Jones, III, Hutchins, Wheeler & Dittmar, Boston, MA, for Daisy F. Sargeant, counter-claimant.

Steven E. Snow, Partridge, Snow & Hahn, Providence, RI, for United Companies Lending Corporation, counter-defendant.

## MEMORANDUM AND ORDER

YOUNG, District Judge.

This is an application for attorneys' fees under Chapter 93A of the Massachusetts General Laws.

## I. BACKGROUND

United Companies Lending Corporation ("United") makes, sells, and services first lien residential mortgage loans that are used primarily for debt consolidation, home improvement, or major household purchases. In 1995, Daisy F. Sargeant ("Sargeant") obtained a loan from United. When Sargeant subsequently fell behind in her loan payments, and United initiated foreclosure proceedings against her, Sargeant filed a consumer complaint with the Consumer Protection and Antitrust Division of the Massachusetts Attorney General's Office (the "Attorney General").

On behalf of the Commonwealth, the Attorney General commenced an action against United in the Massachusetts Superior Court concerning the validity of United's lending practices under Mass.Gen.Laws ch. 184, §§ 17D, 63, and the Mortgage Brokers and Mortgage Lenders Regulations of the Attorney General (the "Mortgage Regulations"), 940 C.M.R. § 8.00 et seq.

In response, invoking the diversity jurisdiction of this Court, United attempted an "end-run" by bringing a putative class action suit against Sargeant and all persons similarly situated. United sought a declaratory judgment to the effect that the relevant section of the Mortgage Regulations, 940 C.M.R. § 8.06(6), was void and unenforceable, that the mortgage loan origination fee or points charged to Sargeant under her loan were lawful and proper, and that a judgment of default against Sargeant on the mortgage was therefore appropriate. Sargeant counterclaimed for a declaration that the loan provided her by United was unconscionable pursuant to 940 C.M.R. § 8.06(6), and was consequently an unfair or deceptive act violative of Mass.Gen.Laws ch. 93A.

After substantial but unsuccessful efforts to dovetail the Attorney General's state action and United's federal action, this Court

proceeded to decide United's claim as a case stated. *See United Cos. Lending Corp. v. Sargeant*, 20 F.Supp.2d 192 (D.Mass.1998). As described in greater detail in that decision, this Court held that 940 C.M.R. § 8.06(6) was valid and enforceable. *See id.* at 209. More pertinent to the instant application, the Court held that aspects of United's loan to Sargeant constituted an unfair and deceptive trade practice in violation of Mass.Gen.Laws ch. 93A, § 2(a) and the disclosure requirements of Mass.Gen.Laws ch. 183, § 63. *See id.* In addition to awarding actual damages of $4,150.00 plus interest, the Court held that Sargeant was entitled to "reasonable attorney's fees in prosecuting to her Chapter 93A claims." *Id.*

## II. APPLICATION FOR FEES

On November 19, 1998, Sargeant filed the instant application requesting $86,598.50 in attorneys' fees (the "Application"). In support of the Application, Sargeant's counsel, Andrew M. Troop ("Troop"), filed an affidavit that details the time billed on Sargeant's case by, and the hourly billing rates of, various lawyers in Troop's firm. According to the affidavit, Troop and his colleagues spent a total of 488.40 hours on the matter. *See* Troop Aff.Exh. A.[1] Although these hours are spread out among several attorneys with billing rates ranging from $115 to $300 per hour, United agrees that such rates "are not out of line with other law firms of comparable quality and size in Boston, Massachusetts during the relevant time periods...." United Mem. at 1; *accord Guckenberger v. Boston Univ.*, 8 F.Supp.2d 91, 105 (D.Mass.1998) (Saris, J.) (calculating rates for Boston civil rights attorneys between 1996 and 1998 to range from $140 to $325 per hour depending on experience, skill, and reputation).

United recognizes, as it must, that this Court's decision in the underlying dispute entitles Sargeant to reasonable attorneys' fees. United argues, nonetheless, that Sargeant's Application is "excessive." *See* United Mem. at 1. The basis of United's argument is threefold. First, United stresses that Sargeant's attorneys spent more hours

than did United's performing the same or corresponding tasks. *See id.* at 3. Second, United claims that certain hours billed by Sargeant's attorneys were "not directly related to nor necessary for the performance of defense counsel's obligations." *Id.* at 1–2. Third, United claims that Sargeant's attorneys are somehow entitled to a smaller award of attorneys' fees because they took the case on a pro bono basis. *See id.* at 8.

## III. DISCRETIONARY APPROACH TO CALCULATION OF ATTORNEY'S FEES

Judge Saris recently described the appropriate procedure for calculating attorney's fees under chapter 93A:

> The Court is required to make concrete findings which supply a clear explanation of the reasons undergirding a particular fee award. Relevant considerations include the nature of the case and the issues presented, the time and labor required, the amount of damages involved, the result obtained, the experience, reputation and ability of the attorney, the usual price charged for similar services by other attorneys in the same area, and the amount of awards in similar cases. No single factor is necessarily dispositive of the services' worth. Ultimately, the fee-shifting anodyne focuses on what counsel's services were objectively worth. The amount of the award is largely discretionary with the judge, who is in the best position to determine how much time was reasonably spent on a case, and the fair value of the attorney's services.

*Arthur D. Little Int'l, Inc. v. Dooyang Corp.*, 995 F.Supp. 217, 221 (D.Mass.1998) (internal quotations and citations omitted).

In this case, the "relevant considerations" and other equitable factors strongly support Sargeant's Application. Sargeant won the underlying litigation, which this Court has previously described as "complex." *See United Cos. Lending Corp.*, 20 F.Supp.2d at 210. Sargeant's attorneys have demonstrated their experience and ability before

---

1. Of those 488.40 hours, 50.5 hours were billed by a junior associate and a law student. Sargeant does not seek any fees for these hours. *See* Troop Aff. at 4.

this Court and their hourly rate is not unusual. Finally, the Court notes that Sargeant did not bring the current state of affairs upon herself—United initiated the underlying litigation rather than awaiting a resolution in the state proceedings.

Although this Court is therefore initially inclined to award Sargeant the full amount requested by her Application, it will address each of United's three challenges.

## IV. DISPROPORTIONATE BILLING

According to United, Sargeant's Application is excessive because Sargeant's counsel spent more hours performing similar or corresponding tasks than did United's counsel. "[T]he time expended by opposing counsel is seldom relevant to a determination of hours reasonably expended on many tasks...." *Norman v. Housing Auth. of Montgomery*, 836 F.2d 1292, 1306 n. 3 (11th Cir.1988). Even if this Court were to start comparing the efficiency of opposing counsel, United's offered examples of disproportionate billing are unconvincing.

■ For example, United claims that Sargeant's counsel spent a total of 76.8 hours on a Rule 19 Motion to Dismiss while United spent only 53.9 hours.[2] This comparison of hours cannot fairly be made for at least two reasons. First, the parties were performing significantly different tasks that are not easily compared; Sargeant's Motion to Dismiss and her Reply to United's Opposition imposed different burdens than did United's Opposition and related amicus memoranda. Second, the preparation of the Motion to Dismiss by Sargeant's counsel may have provided much of the relevant law required of United, thereby reducing the number of hours United spent on its Opposition. *Cf. Bailey v. Dart Container Corp. of Mich.*, 980 F.Supp. 584, 595 (D.Mass.1997) (Lindsay, J.) (discounting fewer hours spent by plaintiff preparing opposition to motion to dismiss because plaintiff had benefit of case law and factual background cited in defendant's brief).

Although United offers other examples of disproportionate billing by Sargeant's counsel, this Court chooses not to discuss each argument in detail. There are ample reasons why Sargeant's counsel may have spent greater numbers of hours on corresponding tasks. Perhaps they were more fastidious, considered more alternatives, or were not willing to rely on the briefs submitted by the Attorney General in the state court proceedings. This Court will no more fault Sargeant's counsel for spending relatively more hours on various aspects of the case than it will castigate United for spending too few. *See Ackerley Communications of Mass., Inc. v. City of Somerville*, 901 F.2d 170, 172 n. 5 (1st Cir.1990) (comparing number of hours spent by opposing parties but noting that such comparisons "may tell little about the quality of the work involved.").

## V. "UNRELATED" TASKS

■ As another basis for claiming Sargeant's Application excessive, United argues that Sargeant's "Application is replete with examples of situations in which they are claiming reimbursement for services performed that do not directly relate to this cause of action." United Mem. at 5. United maintains that Sargeant's counsel should not be awarded fees for hours spent preparing for and attending a hearing in the state court proceeding that was defended by the Attorney General, nor for hours "expended on multiple conferences with the Attorney General's office." *Id.*

■ In reviewing Sargeant's Application, this Court approximates that Sargeant's counsel spent 50 hours interacting with the Attorney General. While it is true that Sargeant must "make a good faith effort to exclude hours spent on unrelated matters ...," *Pontarelli v. Stone*, 781 F.Supp. 114, 123 (D.R.I.1992), this Court has difficulty labeling as "unrelated matters" the collaboration between Sargeant's counsel and the Attorney General's office. The state action and

2. Comparing hours, even if it were a valid approach, is troublesome in this case because the billing statements provided by United, while sufficiently detailed, do not precisely indicate how many hours were spent on individual tasks. Nevertheless, for argument's sake, the Court accepts United's "close approximates."

the federal action involved similar issues and jurisprudence. Moreover, any decisions by the state court could have had potential collateral estoppel effects in the federal action. Finally, Sargeant cannot be faulted for any inefficiencies created by the Attorney General's refusal to consolidate the state and federal actions.

█ While this Court does not consider the interaction between Sargeant's counsel and the Attorney General's office to be "unrelated," it can be appropriately characterized as "non-core" activity. *See McLaughlin v. Boston Sch. Comm.,* 976 F.Supp. 53, 62 (D.Mass.1997) (Garrity, J.) (ruling that non-core services include attendance at court hearings in a non-participatory capacity and conferences with co-counsel). In the First Circuit, non-core services are most commonly compensated at two-thirds of standard billing rates. *See id.* Using this ratio, the Court reduces Sargeant's fee award by $3479.80.[3]

## VI. PRO BONO NATURE OF REPRESENTATION

█ United attempts to attach some weight to the fact that Sargeant's counsel represented her on a pro bono basis. United argues that Sargeant's attorneys "undertook the representation of Ms. Sargeant on a *pro bono* basis and never expected to get paid for their representation." United Mem. at 8. Where otherwise authorized, however, awards of attorneys' fees "are not obviated by the fact that individual plaintiffs are not obligated to compensate their counsel." *Alexander S., by and Through Bowers v. Boyd,* 929 F.Supp. 925, 933 (D.S.C.1995). Even if this were not the case, Sargeant's counsel surely knew that chapter 93A contains an attorneys' fees provision. While the possibility of attorneys' fees may not have factored heavily into the decision to represent Sargeant, it would be strange indeed to penalize attorneys who are willing to sacrifice profits to represent the less fortunate.

United also argues that, "as this Court is likely aware, lawyers who bill paying clients are much more careful and efficient in their usage of time than lawyers who are ... representing clients from whom they never expect to get paid and whom they do not expect to bill." United Mem. at 8. Unfortunately for United, this Court is not "aware" of such a practice. In fact, in this Court's experience, lawyers handling pro bono matters are *especially* efficient so as to avoid putting too large a dent in their own pocketbooks. Consequently, this Court refuses to reduce Sargeant's attorneys' fees award based on the pro bono nature of the representation.

## VII. ORDER

In accordance with the foregoing discussion, this Court hereby ORDERS United to pay Sargeant the following assessment of reasonable attorneys' fees pursuant to Mass. Gen.Laws ch. 93A, § 9(4): attorneys' fees of $83,115.70, representing the total requested by Sargeant less $3479.80 for non-core services arising out of counsel's interaction with the Attorney General's office.

---

**3.** To arrive at this figure, the Court determined each attorney's "non-core" billing rate and subsequently reviewed Sargeant's billing statement with these new rates in mind. The Court notes that the billing rates of each attorney involved changed on August 1, 1997. Such changes were accounted for in the determination of non-core rates and applied to hours billed for interaction with the Attorney General after August 1, 1997.