SYSTEM MANAGEMENT, INC., Forget Me Not Services, Inc., Jose R. Cruz, Victor Laboy, Juan Ayala, Juan Ortega, Gabriel Ochoa, Martin Restrepo, Lucio Ardon, and Cestlio Rodas, Plaintiffs,

v.

Kenneth LOISELLE, Defendant.

No. Civ.A. 99–10744–WGY.

United States District Court, D. Massachusetts.

Aug. 17, 2001.

Gabriel O. Dumont, Jr., Law Offices of Gabriel Dumont, Boston, MA, for Plaintiff.

Armando E. Batastini, Patricia A. Sullivan, Edwards & Angell, LLP, Providence, RI, Matthew T. Oliverio, Providence, RI, for Defendant.

### MEMORANDUM, ORDER, AND REPORT

YOUNG, Chief Judge.

Several plaintiffs filed a complaint in this Court alleging that the defendant had violated the Racketeer Influenced and Corrupt Organizations Act ("RICO"). This Court conducted a non-jury trial and awarded two of the plaintiffs a total of $1,018.56 in treble damages. *Sys. Mgmt., Inc. v. Loiselle*, 138 F.Supp.2d 78 (D.Mass. Mar.19, 2001), *appeal filed*, No. 01–1538 (1st Cir. Apr. 10, 2001). Those two plaintiffs now seek $184,231.75 in attorneys' fees and costs pursuant to RICO's fee-shifting provision, 18 U.S.C. § 1964(c). The Court of Appeals has stayed its consideration of the appeal to allow this Court first to resolve the attorneys' fees issue.

### I. BACKGROUND

For a complete recitation of the facts in this case, see 138 F.Supp.2d 78. A brief synopsis of the presently relevant facts follows: The defendant, Kenneth Loiselle ("Loiselle"), operates Aid Maintenance, Co. ("Aid Maintenance"), a company that provides janitorial services. The plaintiffs are several employees of Aid Maintenance— Jose R. Cruz ("Cruz"), Victor Laboy, Juan Ayala, Juan Ortega, Gabriel Ochoa, Martin Restrepo, Lucio Ardon ("Ardon"), and Cestlio Rodas—and two companies in competition with Aid Maintenance—System Management, Inc. ("System Management") and Forget Me Not Services, Inc. ("Forget Me Not").

The essence of the plaintiffs' complaint is that Loiselle underpaid his employees and thus unfairly underbid the competition. The plaintiffs styled their complaint, however, to fall under the auspices of RICO, which provides plaintiffs with a federal forum and the prospect of treble damages, attorneys' fees, and costs. This Court dismissed all the claims in the complaint save one claim under RICO with the predicate act of mail fraud. *Sys. Mgmt., Inc. v. Loiselle*, 91 F.Supp.2d 401 (D.Mass. Mar.9, 2000); *see also Sys. Mgmt., Inc. v. Loiselle*, 112 F.Supp.2d 112 (D.Mass. Aug.25, 2000) (denying defendant's motion to reconsider). Before trial this Court dismissed Forget Me Not from the case, 138 F.Supp.2d at 81, and during trial this Court dismissed System Management from the case because it failed to establish

that Loiselle's actions had caused it to lose business, *id.* at 90.

After a six-day trial, this Court found that Loiselle had used the mails to commit fraud in violation of RICO, *id.* at 96, and found that Loiselle had underpaid Cruz by $253.34, *id.* at 98, and had underpaid Ardon by $86.18, *id.* at 99. As required by RICO, 18 U.S.C. § 1964(c), this Court trebled the total damages to $1,018.56 and invited Cruz and Ardon to petition for attorneys' fees and costs. *Id.* at 98–99. With respect to the six other individual plaintiffs, this Court entered judgment in favor of Loiselle. *Id.* at 99.

Cruz and Ardon now petition this Court for $180,737.00 in attorneys' fees and $3,494.75 in costs, for a total award of $184,231.75. Loiselle objects to the request for fees and costs given that only two of the ten plaintiffs prevailed on only one of the several claims to the tune of only $1,018.56—a very small fraction of the fees and costs requested.

## II. DISCUSSION

█ Under the "American Rule," federal courts in this country will deny recovery of attorneys' fees absent explicit congressional authorization. *E.g., Alyeska Pipeline Serv. Co. v. Wilderness Soc'y,* 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975). When Congress enacted RICO, it explicitly mandated an award of attorneys' fees and costs in all cases involving civil RICO violations:

> Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and *shall recover* threefold the damages he sustains and *the cost of the suit, including a reasonable attorney's fee....*

18 U.S.C. § 1964(c) (emphasis added).

Because few courts have interpreted RICO's fee-shifting provision, the Court first will consider two other fee-shifting provisions authorized by Congress. The Civil Rights Attorney's Fees Awards Act ("Fees Act"), 42 U.S.C. § 1988(b), is extensively discussed in the case law, while the fee-shifting provision in the Clayton Act, 15 U.S.C. § 15(a), is similar to RICO's provision. Both of these fee-shifting provisions are therefore instructive.

### A. Other Fee–Shifting Provisions

### 1. The Fees Act

The Fees Act provides:

> In any action or proceeding to enforce a provision of [the federal laws protecting civil rights], *the court, in its discretion, may allow the prevailing party,* other than the United States, *a reasonable attorney's fee as part of the costs....*

42 U.S.C. § 1988(b) (emphasis added). Three dissimilarities to RICO's fee-shifting provision are apparent: (i) the award is discretionary, (ii) either the plaintiff or the defendant, rather than just the plaintiff, may be eligible for the award, and (iii) the award need not be in addition to treble damages. Nevertheless, both the Fees Act and RICO's fee-shifting provisions contain the identical all-important phrase, "a reasonable attorney's fee." The following paragraphs will examine the meaning of the words "discretion," "prevailing party," "reasonable," "attorney's fee," and "costs" in the Fees Act to identify which interpretations pertain to the words "reasonable attorney's fee" and "costs" and thus should apply to the fee-shifting provision in RICO.

### a. "Discretion"

█ Although the Fees Act, as written, states that a court, "in its discretion, may allow" a fee award, the statute as inter-

preted means quite the opposite: A court "should ordinarily" award a fee "unless special circumstances would render such an award unjust." *Hensley v. Eckerhart,* 461 U.S. 424, 429, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983) (internal quotation marks omitted); *accord Blanchard v. Bergeron,* 489 U.S. 87, 89 n. 1, 109 S.Ct. 939, 103 L.Ed.2d 67 (1989); *see also Gay Officers Action League v. Puerto Rico,* 247 F.3d 288, 293 (1st Cir.2001) ("virtually obligatory").

### b. "Prevailing Party"

■ Along the same lines, the phrase "prevailing party" in the Fees Act obtains different interpretations depending on whether it refers to plaintiffs or defendants. A defendant is a "prevailing party" only if a court finds that the plaintiff's claim was frivolous, unreasonable, groundless, or brought in bad faith. *Christiansburg Garment Co. v. Equal Employment Opportunity Comm'n,* 434 U.S. 412, 98 S.Ct. 694, 54 L.Ed.2d 648 (1978) (Title VII case); *see also Hughes v. Rowe,* 449 U.S. 5, 14, 101 S.Ct. 173, 66 L.Ed.2d 163 (1980) (applying *Christiansburg* to section 1988); *Andrade v. Jamestown Hous. Auth.,* 82 F.3d 1179, 1189–94 (1st Cir.1996) (affirming fee awards of $2,500.00 to plaintiff and $2,500.00 to subset of defendants who prevailed). A plaintiff, on the other hand, need only obtain "some relief on the merits" to prevail; nominal damages will suffice. *Farrar v. Hobby,* 506 U.S. 103, 111, 113, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992); *see also Tex. State Teachers Ass'n v. Garland Indep. Sch. Dist.,* 489 U.S. 782, 109 S.Ct. 1486, 103 L.Ed.2d 866 (1989) (rejecting "central issue" test). The definition of "prevailing party" is consistent as between plaintiffs and defendants in only one respect: No party can prevail until a *court* changes the legal relationship between the parties, either with a judgment on the merits or a court-ordered consent decree.

*Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.,* 531 U.S. 1004, 121 S.Ct. 1835, 149 L.Ed.2d 855 (2001).

### c. "Reasonable"

#### (1) Relationship to Damages and Fee Agreements

■ The Supreme Court appears to conflate the definition of "reasonable" with that of "prevailing party" when interpreting the Fees Act. Although a plaintiff need only obtain "some relief on the merits" to be the "prevailing party," it is not "reasonable," for a court to award fees to a plaintiff who only obtains nominal damages: " '[T]he most critical factor' in determining the reasonableness of a fee award 'is the degree of success obtained.' " *Farrar,* 506 U.S. at 114, 113 S.Ct. 566 (quoting *Hensley,* 461 U.S. at 436, 103 S.Ct. 1933).

On the other hand, the Supreme Court has not adopted a rule that measures a fee award by a proportion of the damages awarded. *City of Riverside v. Rivera,* 477 U.S. 561, 106 S.Ct. 2686, 91 L.Ed.2d 466 (1986) (plurality opinion) (affirming fee award of $245,456.25 to plaintiffs who recovered $33,350.00 in compensatory and punitive damages); *see also Gay Officers Action League,* 247 F.3d at 296, 300 (awarding $176,888.26 in fees and costs to plaintiffs who successfully challenged anachronistic regulation); *Schneider v. Colegio de Abogados de P.R .,* 187 F.3d 30, 33 (1st Cir.1999) (per curiam) (awarding $230,975.92 in fees to plaintiffs who successfully challenged use of bar dues for ideological purposes); *O'Connor v. Huard,* 117 F.3d 12, 17–18 (1st Cir.1997) (affirming substantial fee award to plaintiff who received nominal damages *and* injunctive relief).

Nor has the Supreme Court looked to the *actual* fee agreement between the

plaintiff and his attorneys to determine what is "reasonable." *City of Burlington v. Dague,* 505 U.S. 557, 112 S.Ct. 2638, 120 L.Ed.2d 449 (1992) (prohibiting, under Solid Waste Disposal and Clean Water Acts, enhancement of fee award to reflect that attorneys were retained on contingent-fee basis); *Venegas v. Mitchell,* 495 U.S. 82, 110 S.Ct. 1679, 109 L.Ed.2d 74 (1990) (allowing contingent fee agreement to require prevailing plaintiff to pay his attorney more than fee award); *Blanchard v. Bergeron,* 489 U.S. 87, 109 S.Ct. 939, 103 L.Ed.2d 67 (1989) (allowing fee award to exceed fees plaintiff actually owed to his attorney under contingent fee agreement); *Blum v. Stenson,* 465 U.S. 886, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984) (calculating "reasonable" fees according to prevailing market rates in relevant community, regardless of fees actually billed by plaintiff's attorney). *But see Kay v. Ehrler,* 499 U.S. 432, 111 S.Ct. 1435, 113 L.Ed.2d 486 (1991) (disallowing prevailing pro se litigant from receiving fees).

### (2) Relationship to Model Code Factors

 The First Circuit occasionally has construed the word "reasonable" in the Fees Act to mean, among other things, that a court should parse all the time spent by an attorney, filter out the "non-core" (i.e., less lawyerly) work from the "core" (i.e., more lawyerly) work, and compensate the "non-core" work at two-thirds the reasonable hourly rate for "core" work. *E.g., Brewster v. Dukakis,* 3 F.3d 488, 492 n. 4 (1st Cir.1993); *Lipsett v. Blanco,* 975 F.2d 934, 940 (1st Cir.1992); *Perez v. Univ. of P.R.,* 600 F.2d 1, 2 (1st Cir.1979); *King v. Greenblatt,* 560 F.2d 1024, 1027 (1st Cir. 1977); *see also, e.g., Wilson v. McClure,* 135 F.Supp.2d 66, 72 (D.Mass.2001); *Alfonso v.. Aufiero,* 66 F.Supp.2d 183, 197 (D.Mass.1999) (Saris, J.). The genesis of the distinction between "core" and "non-core" activities is found in *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714 (5th Cir.1974), in which the Fifth Circuit directed its district courts to consider the factors listed in the Model Code of Professional Responsibility when awarding attorneys' fees.[1] With respect to the first factor, "the time and labor required," the Fifth Circuit wrote:

> The trial judge should weigh the hours claimed against his own knowledge, experience, and expertise of the time required to complete similar activities. If more than one attorney is involved, the possibility of duplication of effort along

---

1. Disciplinary Rule 2–106(B) of the Model Code of Professional Responsibility lists several factors "to be considered as guides in determining the reasonableness of a fee." The rule does not define "reasonable" but rather proscribes a "clearly excessive" fee, defined as when "a lawyer of ordinary prudence would be left with a definite and firm conviction that the fee is in excess of a reasonable fee." Model Code of Prof'l Responsibility DR 2–106(A) & (B). The Model Rules of Professional Conduct, on the other hand, expressly state that a fee "shall be reasonable," as determined by factors similar to those listed in the Model Code. Model Rules of Prof'l Conduct R. 1.5(a); *cf.* Restatement (Third) of the Law Governing Lawyers § 34 (2000) ("A lawyer may not charge a fee larger than is rea-

sonable in the circumstances or that is prohibited by law."). Although *Johnson* relied on the Model Code, presumably federal courts should look to the rules of professional conduct for their own jurisdiction, to the extent they differ and to the extent *Johnson* is relevant. For purposes of determining what is a "reasonable attorney's fee," federal courts should not federalize ethical norms any more than they should federalize billing rates. *See Blum,* 465 U.S. at 895 & n. 11, 104 S.Ct. 1541. To the contrary, a "reasonable attorney's fee" should reflect the local billing rates, which in turn should reflect the local norms. *See Missouri v. Jenkins ex rel. Agyei,* 491 U.S. 274, 288, 109 S.Ct. 2463, 105 L.Ed.2d 229 (1989).

with the proper utilization of time should be scrutinized. The time of two or three lawyers in a courtroom or conference when one would do, may obviously be discounted. It is appropriate to distinguish between legal work, in the strict sense, and investigation, clerical work, compilation of facts and statistics and other work which can often be accomplished by non-lawyers but which a lawyer may do because he has no other help available. Such non-legal work may command a lesser rate. Its dollar value is not enhanced just because a lawyer does it.

*Id.* at 717. The First Circuit adopted this language in 1977, *King,* 560 F.2d at 1027, and it soon became gospel. Even the Supreme Court has quoted the language with approval. *Missouri v. Jenkins ex rel. Agyei,* 491 U.S. 274, 288 n. 10, 109 S.Ct. 2463, 105 L.Ed.2d 229 (1989) (dictum); *see also Blanchard,* 489 U.S. at 99, 109 S.Ct. 939 (Scalia, J., concurring in part and concurring in judgment) (decrying majority's "excessive preoccupation" with *Johnson* ). Although the legacy of *Johnson* lives on in the First Circuit, the Supreme Court, after an initial enthusiasm for *Johnson's* recommendations, has distanced itself from the idea of defining "reasonable" by looking to all the factors listed in the Model Code.

In the 1970s, two approaches to defining "reasonable" developed in the courts of appeals: (i) the lodestar approach, which relies primarily on the product of the hours expended multiplied by the hourly rate for attorneys in the relevant market, and (ii) the Model Code approach, which balances sundry factors. *See generally* 2 Mary Francis Derfner & Arthur D. Wolf, *Court Awarded Attorney Fees* ¶ 15.03 (1998 & Supp.2000). The lodestar approach originated in a case under the Clayton Act, *Lindy Bros. Builders, Inc. v. Am. Radiator & Standard Sanitary Corp.,* 487 F.2d 161 (3d Cir.1973), *appeal after remand,* 540 F.2d 102 (3d Cir.1976), while the Model Code approach originated in *Johnson,* a civil rights case.

With respect to attorneys fees for civil rights cases, the Supreme Court initially adopted a blended approach to defining "reasonable" that started with the lodestar calculation and concluded by adjusting the award based on the "results obtained" factor found in *Johnson* and the Model Code:

The product of reasonable hours times a reasonable rate does not end the inquiry. There remain other considerations that may lead the district court to adjust the fee upward or downward, including the important factor of the "results obtained." This factor is particularly crucial where a plaintiff is deemed "prevailing" even though he succeeded on only some of his claims for relief. In this situation two questions must be addressed. First, did the plaintiff fail to prevail on claims that were unrelated to the claims on which he succeeded? Second, did the plaintiff achieve a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award?

*Hensley,* 461 U.S. at 434, 103 S.Ct. 1933 (footnote omitted); *see also Coutin v. Young & Rubicam P.R., Inc.,* 124 F.3d 331, 338–40 (1st Cir.1997) (delineating three separate meanings of "results obtained"). The Supreme Court noted that "[t]he district court also may consider other factors identified in [*Johnson* ], though it should note that many of these factors usually are subsumed within the initial calculation of hours reasonably expended at a reasonable hourly rate ." *Hensley,* 461 U.S. at 434 n. 9, 103 S.Ct. 1933.

The following Term, the Supreme Court held that " 'reasonable fees' under § 1988 are to be calculated according to the prevailing market rates in the relevant com-

munity, regardless of whether plaintiff is represented by private or nonprofit counsel." *Blum*, 465 U.S. at 895, 104 S.Ct. 1541. The Supreme Court noted its definition of "prevailing market rate":

[T]he critical inquiry in determining reasonableness is now generally recognized as the appropriate hourly rate. And the rates charged in private representations may afford relevant comparisons. In seeking some basis for a standard, courts properly have required prevailing attorneys to justify the reasonableness of the requested rate or rates. To inform and assist the court in the exercise of its discretion, the burden is on the fee applicant to produce satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation. A rate determined in this way is normally deemed to be reasonable, and is referred to—for convenience—as the prevailing market rate.

*Id.* at 895 n. 11, 104 S.Ct. 1541. The Supreme Court went on to hold that the district court abused its discretion when it enhanced the fee award beyond the lodestar amount because the enhancement was premised on Model Code factors such as "novelty," "complexity," "high quality of representation," "riskiness," and "results obtained"—factors that the Supreme Court concluded were already encompassed within the initial lodestar calculation. *Id.* at 898–902, 104 S.Ct. 1541.

Two Terms later, the Supreme Court held that there is a "strong presumption" that the lodestar figure represents a "reasonable" fee. *Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 555, 106 S.Ct. 3088, 92 L.Ed.2d 439 (1986) (construing fee-shifting provision in

Clean Air Act). The Supreme Court explained its earlier precedent as follows:

*Blum* restated that the proper first step in determining a reasonable attorney's fee is to multiply "the number of hours reasonably expended on the litigation times a reasonable hourly rate." [465 U.S.] at 888, 104 S.Ct. 1541. We emphasized, however, that the figure resulting from this calculation is more than a mere "rough guess" or initial approximation of the final award to be made. Instead, we found that "[w]hen ... the applicant for a fee has carried his burden of showing that the claimed rate and number of hours are reasonable, the resulting product *is presumed* to be the reasonable fee" to which counsel is entitled. *Id.*, at 897, 104 S.Ct. 1541 (emphasis added).

*Blum* also limited the factors which a district court may consider in determining whether to make adjustments to the lodestar amount. Expanding on our earlier finding in *Hensley* that many of the *Johnson* factors "are subsumed within the initial calculation" of the lodestar, we specifically held in *Blum* that the "novelty [and] complexity of the issues," "the special skill and experience of counsel," the "quality of representation," and the "results obtained" from the litigation are presumably fully reflected in the lodestar amount, and thus cannot serve as independent bases for increasing the basic fee award. 465 U.S., at 898–900, 104 S.Ct. 1541. Although upward adjustments of the lodestar figure are still permissible, *id.*, at 901, 104 S.Ct. 1541, such modifications are proper only in certain "rare" and "exceptional" cases, supported by both "specific evidence" on the record and detailed findings by the lower courts. *See id.*, at 898–901, 104 S.Ct. 1541.

*Del. Valley Citizens' Council,* 478 U.S. at 564–65. Since 1986, the Supreme Court repeatedly has stated that there is a "strong presumption" that the lodestar figure represents a "reasonable" fee. *See City of Burlington,* 505 U.S. at 562, 112 S.Ct. 2638 (construing section 1988); *Blanchard,* 489 U.S. at 95, 109 S.Ct. 939 (same). *But see Farrar,* 506 U.S. at 114, 113 S.Ct. 566 (" '[T]he most critical factor' in determining the reasonableness of a fee award 'is the degree of success obtained.' "); *Coutin,* 124 F.3d at 337 & n. 3 (inviting courts to sculpt fee awards in light of *Johnson* factors).

### d. "Attorney's Fee"

■ Although the Fees Act only mentions *attorneys'* fees, a court may also award—consistent with the rates and practices prevailing in the relevant market—fees for the work of non-lawyers, such as paralegals and law clerks, who assisted the successful attorney. *Missouri v. Jenkins ex rel. Agyei,* 491 U.S. 274, 109 S.Ct. 2463, 105 L.Ed.2d 229 (1989).

### e. "Costs"

The Fees Act states that attorneys' fees may be allowed "as part of the costs." The Supreme Court has attempted to give the word "costs" a consistent meaning in federal law. *See Crawford Fitting Co. v. J.T. Gibbons, Inc.,* 482 U.S. 437, 107 S.Ct. 2494, 96 L.Ed.2d 385 (1987) (harmonizing "costs" in Federal Rule of Civil Procedure 54(d) with "costs" in 28 U.S.C. § 1920). In the course of an opinion holding that expert witness fees cannot be shifted to the losing party under the Fees Act, *W. Va. Univ. Hosps., Inc. v. Casey,* 499 U.S. 83, 111 S.Ct. 1138, 113 L.Ed.2d 68 (1991)—a holding nullified by Congress, 42 U.S.C. § 1988(c)—the Supreme Court noted that the word "costs" in fee-shifting statutes should be given the same meaning as the word "costs" in section 1920 of Title 28,

499 U.S. at 87 n. 3, 111 S.Ct. 1138. The Supreme Court went on to note, however, that reasonable out-of-pocket expenses incurred by the attorney and normally charged to the client could be awarded as part of the attorneys' fees. *Id.* (citing *Northcross v. Bd. of Educ.,* 611 F.2d 624, 639 (6th Cir.1979) ("Reasonable photocopying, paralegal expenses, and travel and telephone costs are thus recoverable pursuant to the statutory authority of § 1988.")); *see also McLaughlin ex rel. McLaughlin v. Boston Sch. Comm.,* 976 F.Supp. 53, 65 (D.Mass.1997) (Garrity, J.) ("customarily billed directly to the client and shown to have been incurred reasonably and necessarily").

### f. Putting It Together

Twenty-five years after its enactment, the Fees Act effectively reads:

In any action or proceeding to enforce a provision of [the federal laws protecting civil rights], the court, ~~in its discretion, may~~ *should, unless there are exceptional circumstances that would render an award unjust, such as a plaintiff who only obtains nominal damages,* allow ~~the prevailing party~~ *a plaintiff who obtains some relief from a court on the merits of his claim, or a defendant confronted with a claim deemed by a court to be frivolous, unreasonable, groundless, or brought in bad faith,* other than the United States *or a pro se litigant,* ~~a reasonable~~ an attorney's fee, *calculated by multiplying (x) the reasonable number of hours worked by the attorney and his support staff, excluding hours spent on unrelated and unsuccessful claims and perhaps adjusting the total hours in light of the results obtained but without regard to the actual fee agreement between the prevailing party and his attorney or to the fee request's proportion to the damages recovered, by (y) the*

*prevailing hourly rate in the relevant community for comparable professional services,* ~~as part of the costs~~ *in addition to the attorney's out-of-pocket expenses and the costs allowed by 28 U.S.C. § 1920 ....*

42 U.S.C. § 1988(b) (as properly construed).

## 2. The Clayton Act

■ The fee-shifting provision in the Clayton Act provides:

> *[A]ny person who shall be injured in his business or property* by reason of anything forbidden in the antitrust laws may sue therefor in any district court of the United States in the district in which the defendant resides or is found or has an agent, without respect to the amount in controversy, and *shall recover* three-fold the damages by him sustained, and *the cost of suit, including a reasonable attorney's fee.*

15 U.S.C. § 15(a) (emphasis added). The similarity to the fee-shifting provision in RICO is no coincidence: Congress patterned RICO on the Clayton Act. *See Klehr v. A.O. Smith Corp.,* 521 U.S. 179, 188–89, 117 S.Ct. 1984, 138 L.Ed.2d 373 (1997) (harmonizing RICO and Clayton Act); *Agency Holding Corp. v. Malley–Duff & Assocs., Inc.,* 483 U.S. 143, 150–52, 107 S.Ct. 2759, 97 L.Ed.2d 121 (1987) (same). *See generally* 1 Derfner & Wolf, *supra,* ¶ 8.07 (collecting similar fee-shifting provisions). Accordingly, the Court will use the body of law interpreting the fee-shifting provision in the Clayton Act to interpret the fee-shifting provision in RICO.

The Supreme Court has addressed the fee-shifting provision in the Clayton Act only once. In *Perkins v. Standard Oil Co.,* 399 U.S. 222, 90 S.Ct. 1989, 26 L.Ed.2d 534 (1970) (per curiam), the Supreme Court simply held that the Clayton Act allows a district court to award attorneys' fees for work done on appeal.

Courts in this jurisdiction have been equally taciturn. The First Circuit once reversed a court that awarded *no* fees on the basis of the *actual* fee agreement between the plaintiff and its attorneys, *Farmington Dowel Prods. Co. v. Forster Mfg. Co.,* 421 F.2d 61, 86–91 (1st Cir.1969), and once reduced part of a fee award by half because the plaintiff had only obtained nominal damages after obtaining an injunction, *Home Placement Serv., Inc. v. Providence Journal Co.,* 819 F.2d 1199, 1209–12 (1st Cir.1987). In this district, one court once awarded fees under the Clayton Act in a manner similar to an award under the Fees Act, considering Model Code factors such as "non-core" time and "results obtained." *Refuse & Envtl. Sys., Inc. v. Indus. Servs. of Am.,* 732 F.Supp. 1209, 1215–22 (D.Mass.1990) (Freedman, C.J.), *aff'd in part, rev'd in part on other grounds,* 932 F.2d 37 (1st Cir.1991); *cf. Hew Corp. v. Tandy Corp.,* 480 F.Supp. 758, 761–65 (D.Mass.1979) (Freedman, J.) (awarding fees in light of *Johnson* factors after parties settled class action under Clayton Act). Other courts have also addressed the "results obtained" factor when considering a fee award under the Clayton Act. *E.g., Blue Cross & Blue Shield United v. Marshfield Clinic,* 152 F.3d 588, 595–96 (7th Cir.1998); *La. Power & Light Co. v. Kellstrom,* 50 F.3d 319, 329–31 (5th Cir. 1995) (per curiam); *Gulfstream III Assocs., Inc. v. Gulfstream Aerospace Corp.,* 995 F.2d 414, 423 (3d Cir.1993); *H.J. Inc. v. Flygt Corp.,* 925 F.2d 257, 259–61 (8th Cir.1991); *U.S. Football League v. Nat'l Football League,* 887 F.2d 408, 415 (2d Cir.1989); *Tic–X–Press, Inc. v. Omni Promotions Co.,* 815 F.2d 1407, 1423–24 (11th Cir.1987).

## B. The RICO Fee–Shifting Provision

### 1. Other Courts' Interpretations

A smattering of courts have addressed the RICO fee-shifting provision. The

First Circuit has not addressed the provision, except to hint that an award might depend on the "extent of success." *Bonilla v. Volvo Car Corp.*, 150 F.3d 88, 94 (1st Cir.1998). Following in the footsteps of *City of Riverside*, the Third Circuit has rejected a "rule of proportionality" for fee awards under RICO. *N.E. Women's Ctr. v. McMonagle*, 889 F.2d 466, 471–75 (3d Cir. 1989), *cited with approval in Rosario v. Livaditis*, 963 F.2d 1013, 1019 n. 2 (7th Cir.1992). Courts have disagreed, however, as to the extent to which the "results obtained" should affect a fee award. *See United HealthCare Corp. v. Am. Trade Ins. Co.*, 88 F.3d 563, 576 n. 10 (8th Cir. 1996) (noting disagreement). *Compare Stochastic Decisions, Inc. v. DiDomenico*, 995 F.2d 1158, 1168 (2d Cir.1993) (considering "results obtained" to be of limited relevance), *with Lerman v. Joyce Int'l, Inc.*, 10 F.3d 106, 113–14 (3d Cir.1993) (contra).

## 2. This Court's Interpretation

▮ Although policy considerations occasionally trump canons of statutory construction, *e.g., Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 525–33, 114 S.Ct. 1023, 127 L.Ed.2d 455 (1994) (9–0 decision), in this case the Court sees no reason to depart from the traditional canon that similar words in similar statutes should be given similar meanings, *id.* at 536–37, 114 S.Ct. 1023 (Thomas, J., concurring in judgment) (collecting cases). Accordingly, the Court will attempt to harmonize the fee-shifting provision in RICO with the fee-shifting provision in the Clayton Act and the words "reasonable attorney's fee" and "costs" found in the Fees Act.

But for two Supreme Court cases, this Court's task would be simple. Those cases are *Hensley* and *Farrar*, which imply that the most critical factor in determining the reasonableness of a fee award is the degree of success obtained. *See supra* pp. 200, 202. For several reasons, this Court will not place much emphasis on *Hensley* and *Farrar* when interpreting the fee-shifting provision in RICO.

First, such a reading conflicts with other Supreme Court cases that have downplayed the Model Code factors and have emphasized the "strong presumption" that the lodestar figure represents a "reasonable" fee. *See supra* pp. 202–03. Second, both *Hensley* and *Farrar* appear to smuggle the notion of "prevailing party" into the definition of "reasonable." The "prevailing party" requirement ostensibly requires a court to balance the claims won by the plaintiff against the claims lost to the defendant. If the "results obtained" barely favor the plaintiff, then the defendant has prevailed almost as much as the plaintiff and any fee award to the plaintiff should be canceled out by a fee award to the defendant. *Christiansburg* skewed the definition of "prevailing party" to make it easier for *plaintiffs* to prevail, *see supra* p. 200, so *Hensley* and *Farrar* may plausibly be read to skew the definition of "reasonable" to restore some balance to the "prevailing party" requirement. Under RICO, a court cannot award fees to a prevailing defendant, so to the extent that *Hensley* and *Farrar* concern the "prevailing party" requirement, they are irrelevant in the RICO context. Indeed, *Hensley* explicitly states, "[T]he standards set forth in this opinion are generally applicable in all cases in which Congress has authorized an award of fees to a '*prevailing party.*'" 461 U.S. at 433 n. 7, 103 S.Ct. 1933 (emphasis added). Third, both *Hensley* and *Farrar* appear to smuggle the notion of "discretion" into the definition of "reasonable." The plain meaning of the Fees Act gives a court the discretion *not* to award any fees, and if the greater includes the lesser, then a court also has the discretion to award *some*, but not all, of the fees.

The Supreme Court, however, early on skewed the definition of "discretion" to *promote* awarding fees to plaintiffs, *see supra* p. 200, so *Hensley* and *Farrar* may plausibly be read to skew the definition of "reasonable" to restore some meaning to the word "discretion." Under RICO, a court *must* award fees to a plaintiff injured in his business or property, so to the extent *Hensley* and *Farrar* concern a court's "discretion" to deny fees, they are equally irrelevant in the RICO context. Indeed, Justice O'Connor, who cast the deciding vote in *Farrar*, specifically pointed to the word "discretion" in her separate concurring opinion to justify the denial of fees in that case. *Farrar*, 506 U.S. at 119, 113 S.Ct. 566 (O'Connor, J., concurring). Fourth, and related to the second and third reasons, applying *Hensley* and *Farrar* to RICO would vitiate the textual differences between the two fee-shifting provisions. *See supra* p. 199. Furthermore, limiting "a reasonable attorney's fee" on the basis of the "results obtained" effectively would replace RICO's formula of "damages times three plus fees and costs" with a new formula, "damages times something more than three." Yet Congress intended the attorneys' fees in RICO cases to be *in addition to*, rather than merely a fraction or multiple of, treble damages. Finally, to the extent that *Fogerty* suggests that a court may construe similarly-worded statutes differently on the basis of perceived policy differences, this Court notes that the obvious policy of the RICO statute is deterrence, which would best be served by fully compensating private attorneys general, no matter how limited their success. Furthermore, the Supreme Court has consistently championed simplicity over complexity and warned that "[a] request for attorney's fees should not result in a second major litigation." *Hensley*, 461 U.S. at 437, 103 S.Ct. 1933.

This goal of simplicity, of course, has proved a somewhat pious and forlorn hope. In view of the complexities the Supreme Court and the lower courts have grafted onto the fee calculation process, federal courts are today enmeshed in an·inordinately time consuming and ultimately futile search for a fee that reflects market forces in the absence of a relevant market.

In the past five years, for example, attorney fee awards in this district have resulted in no fewer than thirteen full published opinions, spanning approximately 173 pages in the Federal Supplement. *Yankee Candle Co. v. Bridgewater Candle Co.*, 140 F.Supp.2d 111 (D.Mass.2001) (Ponsor, J.) (Copyright and Lanham Acts); *Wilson v. McClure*, 135 F.Supp.2d 66 (D.Mass.2001) (section 1983); *Pazik v. Gateway Reg'l Sch. Dist.*, 130 F.Supp.2d 217 (D.Mass.2001) (Individuals with Disabilities Education Act); *United States v. Knott*, 106 F.Supp.2d 174 (D.Mass.2000) (Gertner, J.) (Hyde Amendment), *aff'd in part, rev'd in part*, 256 F.3d 20 (1st Cir. 2001); *Rolland v. Cellucci*, 106 F.Supp.2d 128 (D.Mass.2000) (Neiman, Mag.) (section 1983); *Alfonso v. Aufiero*, 66 F.Supp.2d 183 (D.Mass.1999) (Saris, J.) (section 1983); *Mountain Cable Co. v.. Choquette*, 53 F.Supp.2d 107 (D.Mass.1999) (Ponsor, J.) (Communications Act); *Connolly v. Harrelson*, 33 F.Supp.2d 92 (D.Mass.) (Massachusetts Civil Rights Act), *aff'd*, 201 F.3d 426 (1st Cir.1999); *United Cos. Lending Corp. v. Sargeant*, 32 F.Supp .2d 21 (D.Mass.1999) (Chapter 93A); *Stanton v. S. Berkshire Reg'l Sch. Dist.*, 28 F.Supp.2d 37 (D.Mass.1998) (Ponsor, J.) (section 1983), *aff'd*, 197 F.3d 574 (1st Cir.1999); *Guckenberger v. Boston Univ.*, 8 F.Supp.2d 91 (D.Mass.1998) (Saris, J.) (Americans with Disabilities Act); *Arthur D. Little Int'l, Inc. v. Dooyang Corp.*, 995 F.Supp. 217 (D.Mass.1998) (Saris, J.) (Chapter 93A); *McLaughlin ex rel. McLaughlin v. Boston Sch. Comm.*, 976

F.Supp. 53 (D.Mass.1997) (Garrity, J.) (section 1983). Small wonder this is called a "congested" district. Keeping in mind that the taxpayer cost of a single day of the operation of a district court session is now estimated to exceed $20,000, *see Specialized Plating, Inc. v. Fed. Envtl. Servs., Inc.*, 975 F.Supp. 397, 398–401 (D.Mass. 1997), one wonders whether the social benefits of such particularized calculations are worth the cost of making them.

The more streamlined attorneys' fees jurisprudence that has grown up under the Massachusetts Consumer Protection Act, Mass.Gen.Laws ch. 93A, § 9, for example, seems adequately to achieve the social policies sought by that act with minimal expenditure of scarce judicial resources. *See, e.g., Gum v. Oak View, LLC*, No. 983531, 2001 WL 170458, at *7 (Mass.Super. Jan.22, 2001) (Botsford, J.) (citing *Linthicum v. Archambault*, 379 Mass. 381, 388–89, 398 N.E.2d 482 (1979)). Just as Massachusetts is light years ahead of the federal government in the practicability and sensitivity of its approach to criminal sentencing, so too a careful review of its approach to fee awards seems warranted.

Accordingly, in interpreting RICO's fee-shifting provision, the Court relies on *Hensley* and *Farrar* to conclude only that a court may, but need not, diminish an award on the basis of unsuccessful claims that are interconnected with successful RICO claims. It would be unreasonable to award attorneys' fees for time spent on unsuccessful claims that are *unrelated* to the successful RICO claims and can easily be severed. *See Hensley*, 461 U.S. at 434–35, 103 S.Ct. 1933; *Coutin*, 124 F.3d at 339. When the unsuccessful claims are interconnected with the successful RICO claims, however, the Court parts company with *Hensley*, 461 U.S. at 436–37, 103 S.Ct. 1933, and will not feel *obliged* to parse out the unsuccessful claims or to reduce arbitrarily the overall award to reflect the results obtained. *Cf. Coutin*, 124 F.3d at 339, 340 (downplaying *Hensley*'s *obligation* to reduce fee awards). This interpretation is most faithful to the text and policy of RICO, and the "strong presumption" favoring the lodestar figure, while still giving meaning to *Hensley, Farrar*, and those courts that cited *Hensley* and *Farrar* with approval when interpreting the fee-shifting provisions in RICO and the Clayton Act, *see supra* pp. 205–06.

 Once *Hensley* and *Farrar* are accounted for, everything else quickly falls into place. If a plaintiff has been injured in his business or property by a RICO violation, a court must award attorneys' fees. To calculate a reasonable attorney's fee, the Court will begin with the number of hours listed in the contemporaneous billing records for each person who worked on the plaintiff's case. *Gay Officers Action League*, 247 F.3d at 295; *see also id.* at 297 (noting potential penalty for poor time records). The Court will discount for time spent on unsuccessful claims that are unrelated to the successful RICO claims and can easily be severed. *Supra* p. 208. Furthermore, the Court will discount for excessive hours, *Gay Officers Action League*, 247 F.3d at 295, and may use its discretion to discount for time spent on unsuccessful but interconnected claims, *supra* p. 208. Once the Court determines the reasonable number of hours that each person worked on the plaintiff's case, the Court will sum the product of each person's hours multiplied by a reasonable hourly rate to achieve the lodestar figure. There is a "strong presumption" that the lodestar figure is "reasonable." *See supra* pp. 202–03. Neither the amount of damages recovered nor the actual terms of the fee agreement between the plaintiff and

his attorneys will be used to vary the lodestar figure. *See supra* pp. 201–02.

■ A few words on the reasonable hourly rate are in order. Courts in the First Circuit traditionally have tinkered extensively with the fees awarded in civil rights cases. *See, e.g., supra* p. 201. Although the tinkering—especially the distinction between core and non-core time— originally was an effort to use the Model Code factors to determine a reasonable hourly rate, such tinkering now should be considered solely a function of discretion rather than a definition of what is reasonable.[2] That is because the lodestar calculation presumably captures the balance of all the Model Code factors; additional tinkering merely serves to double count some factors. *See supra* p. 203. To determine a reasonable hourly rate, *Blum* instructs the Court to find the prevailing hourly rate in Boston for persons with comparable skill, experience, and reputation as the persons who worked on the plaintiff's case. *Alfonso,* 66 F.Supp.2d at 197. The First Circuit has read *Blum* to mean that fee awards should reflect what an *average* person could fetch in the market for similar work. *See United States v. Metro. Dist. Comm'n,* 847 F.2d 12, 19 (1st Cir.1988). *But see Gusman v. Unisys Corp.,* 986 F.2d 1146, 1149–51 (7th Cir. 1993) (looking to hourly rate actual person in question could command). As the market rate is primarily a question of fact, *Blum* suggests a court should be agnostic

about the rate that the market supplies. Furthermore, the text of the fee-shifting provision in RICO does not afford a court the discretion found in the text of the Fees Act. Accordingly, a court awarding fees in a RICO case should tie itself to the market's mast and resist the siren song of sentiment when determining a reasonable hourly rate.

## C. The Plaintiffs' Request for Fees and Costs

With the foregoing legal conclusions in mind, the Court considers the plaintiffs' request for attorneys' fees and costs.

### 1. Calculation of the Lodestar

#### a. Reasonable Hours Expended

■ The plaintiffs' two attorneys submitted a thirty-three page bill to this Court chronicling 783.60 hours of professional services rendered over the course of two years. Although not all of the plaintiffs and not all of the claims were successful, the Court concludes that all of the claims and all of the plaintiffs were interconnected with the common core of facts that ultimately furnished the basis for the successful RICO claim: Loiselle's underpayment of his employees. Thus, the Court is not obliged to discount for the unsuccessful plaintiffs and claims, and the Court will not use its discretion to do so because the core facts and the successful core theory dominated the litigation from

---

2. The Court candidly concedes that it has repeatedly followed the "core" versus "non-core" distinction in awarding attorneys' fees in civil rights litigation. *Wilson v. McClure,* 135 F.Supp.2d 66, 72 (D.Mass.2001); *Ciulla v. Rigny,* 89 F.Supp.2d 97, 104–05 & n. 9 (D.Mass.2000); *Connolly v. Harrelson,* 33 F.Supp.2d 92, 96 (D.Mass.), *aff'd,* 201 F.3d 426 (1st Cir.1999); *see also Zurakowski v. D'Oyley,* 46 F.Supp.2d 87, 89 (D.Mass.1999) (Massachusetts Civil Rights Act); *United Cos. Lending Corp. v. Sargeant,* 32 F.Supp.2d 21, 25 & n. 3 (D.Mass.1999) (Chapter 93A). It is only now that, in order to calculate attorneys' fees in the RICO context, the Court has been required to "think outside the box," *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.,* 234 F.3d 558, 595 (Fed.Cir.2000) (en banc) (Plager, J., concurring) (urging innovative judicial analysis), *cert. granted,* — U.S. —, 121 S.Ct. 2519, 150 L.Ed.2d 692 (2001) (No. 00–1543), and the paucity of the intellectual underpinnings of this distinction has become apparent.

start to finish. Each time entry in the bill for the plaintiffs' attorneys is sufficiently descriptive for the Court to assess the reasonableness of the time spent on each task. Having reviewed each time entry, the Court concludes that none is excessive. In sum, 783.60 is the reasonable number of hours expended by the plaintiffs' attorneys.

### b. Reasonable Hourly Rates

■ The plaintiffs' two attorneys are Gabriel O. Dumont, Jr. ("Dumont") and John D. Burke ("Burke"). Dumont has practiced law in Boston for twenty-four years; Burke for eleven years. They are partners in a small firm and apparently bill at $235.00/hour and $200.00/hour, respectively. The only evidence Dumont and Burke provided regarding the prevailing hourly rate in Boston for persons with comparable skill, experience, and reputation is the affidavit of another Boston attorney, which states:

> I am familiar with the typical billing rates for trial attorneys in the greater-Boston market for cases of similar size and complexity such as the instant action. While there are, of course, atypical rates charged by certain lawyers and/or firms, the customary rates for senior trial attorneys range from $250 to $325 per hour.

Fitzhugh Aff. ¶ 3. Normally the Court would be reluctant to determine reasonable hourly rates on such scant evidence. Two other sources, however, furnish the evidence that the Court requires. First and foremost, Loiselle does not complain about the rates charged by Dumont and Burke. As Loiselle is directly in touch with the market for RICO lawyers, the Court finds Loiselle's silence significant. Second, the rates charged by Dumont and Burke are consistent with rates approved by the Court in the past. The point is not

that attorneys should be paid according to precedent, but rather that recent opinions confirm what is happening in the market. The rates requested are also confirmed by the most recent data concerning billing by the largest Boston law firms. As reported by the Boston Law Tribune:

#### REVENUE PER LAWYER

| | |
|---|---|
| Hale and Dorr<br>390 lawyers, 132 equity partners | $665,000 |
| Ropes & Gray<br>368 lawyers, 149 equity partners | $650,000 |
| Testa, Hurwitz & Thibeault<br>364 lawyers, 78 equity partners | $620,000 |
| Mintz, Levin, Cohn, Ferris,<br>Glovsky and Popeo<br>351 lawyers, 62 equity partners | $600,000 |
| Bingham Dana<br>366 lawyers, 64 equity partners | $570,000 |
| Goodwin Procter<br>408 lawyers, 93 equity partners | $490,000 |

Amy Fantini, *Boston Firms Look Outward to Move Upward*, Boston L. Trib., July 9, 2001, at 3. Assuming each lawyer billed a hefty 2,200 hours per year, this works out to the average billing rates listed below:

| | |
|---|---|
| Hale and Dorr | $302/hour |
| Ropes & Gray | $295/hour |
| Testa, Hurwitz & Thibeault | $282/hour |
| Mintz, Levin, Cohn, Ferris,<br>Glovsky and Popeo | $273/hour |
| Bingham Dana | $259/hour |
| Goodwin Procter | $223/hour |

In sum, $235.00 is a reasonable hourly rate for Dumont and $200.00 is a reasonable hourly rate for Burke.

### c. Putting It Together

■ The lodestar figure is $180,737.00. The Court finds no reason to stray from the strong presumption that the lodestar

figure is a reasonable attorney's fee. The bill for the plaintiffs' attorneys also lists $3,494.75 in "costs." These consist of expenses for court filings, process servers, couriers, mailings, deposition transcripts, prints, trial exhibits, and interpreters. As matter of law, some of these expenses are "costs," 28 U.S.C. § 1920, while others are out-of-pocket expenses that may be deemed part of the attorneys' fees. *See supra* p. 204. Rather than parse the out-of-pocket expenses from the "costs," the Court will simply deem them all to be "costs" because the proper classification does not affect the outcome. Accordingly, the Court concludes that $180,737.00 is the "reasonable attorney's fee" and $3,494.75 is the "costs," for a total award of $184,231.75.

### 2. Loiselle's Arguments

Loiselle presents several arguments for reducing the award. None is persuasive.

■ First, Loiselle argues that the fee award should be discounted by eighty percent or more to reflect that he prevailed against eight of the original ten plaintiffs. RICO does not permit awarding attorneys' fees to a prevailing *defendant,* however, so the extent of Loiselle's success is irrelevant. Furthermore, *Hensley* rejected such a mathematical approach to fee reductions, 461 U.S. at 435 n. 11, 103 S.Ct. 1933, so this Court will as well.

■ Second, Loiselle argues that the fee award should be discounted for time spent consulting with union officials who were not among the named parties in the case. As the Court stated in its findings of fact, the labor union "recruited these corporate and individual plaintiffs, provided them with its handpicked counsel, and financed this entire litigation, all to pursue a vendetta against a non-union company.... The entire case smacks of champerty." 138 F.Supp.2d at 80. But cham-

perty is not illegal, *id.* at 80 n. 2, and consulting those with more experience certainly is not unreasonable. To the contrary, consulting those with more experience is both reasonable and efficient. Furthermore, to the extent that Loiselle finds solace in the Court's comments about champerty, he forgets that judgment was entered against him, rendering all such comments irrelevant to the question of attorneys' fees. *Coutin,* 124 F.3d at 341–42.

Third, Loiselle argues that the fee award should be discounted to reflect the results obtained. As explained above, the Court will not so extend *Hensley* and *Farrar* to the fee-shifting provision in RICO given its differences in text and policy compared to the Fees Act, and given the strong presumption favoring the lodestar figure. *See supra* pp. 206–08. Thus, the Court need not diminish the award on the basis of unsuccessful claims that are interconnected with the successful RICO claims. As explained above, all the claims in this case were interconnected and the Court will not exercise its discretion to diminish the award. *See supra* p. 209.

■ Fourth, Loiselle argues that the number of hours reasonably expended should be reduced by approximately 106 to reflect the time spent on unsuccessful attempts to obtain class certification. The issue of class certification was interconnected with the successful RICO claims, so the Court is not obliged to diminish the award on that basis. Nor will the Court exercise its discretion to do so.

Fifth, Loiselle argues that the time spent on non-core tasks should be compensated at a lower hourly rate. As explained above, the lodestar calculation presumably captures the balance of all the Model Code factors, so the Court need not distinguish core from non-core tasks to determine a

reasonable attorney's fee. *See supra* pp. 208–09.

■ Sixth, Loiselle argues that the victory was *de minimis* so *Farrar* prohibits a fee award. Without deciding whether nominal damages can support a fee award under RICO, the Court rejects Loiselle's suggestion that the plaintiffs' victory was *de minimis*. The only reason the victory appears so small is that Loiselle paid his employees so little in the first place. Had Loiselle paid his employees at the hourly rate that he must now pay their attorneys, the treble damages would be tens of thousands of dollars—no small chunk of change. The fact that Loiselle was stingy cannot help him. Equal protection requires the Court to extend the rule of law to even the lowest paid members of the workforce.

■ Seventh, Loiselle argues that Cruz is not entitled to attorneys' fees because he signed a release in conjunction with the settlement of an identical suit in state court. Assuming the Court has jurisdiction to interpret that release, the Court has no trouble concluding from the plain language of the release that it pertains only to the suit in state court and does not affect this suit. Regardless, even if Ardon were the only prevailing plaintiff, the Court would still award all the fees and costs requested because the entire case turned on a common core of facts.

Finally, Loiselle argues that the "costs" should not include expenses incurred outside of trial. That may be so under section 1920 of Title 28, but when Congress has explicitly authorized an award of attorneys' fees, such an award may include reasonable out-of-pocket expenses incurred by the attorney and normally charged to the client. *See supra* p. 204.

## III. CONCLUSION

"The better part of valor is discretion." William Shakespeare, *The First Part of King Henry the Fourth* act 5, sc. 4. But Loiselle chose to fight this one out. Now that he has lost the battle, this Court will not exercise *its* discretion for no better reason than to comfort defeat.

The plaintiffs' petition for attorneys' fees and costs [Docket No. 189] is GRANTED. Kenneth Loiselle shall pay Jose R. Cruz and Lucio Ardon $180,737.00 for attorneys' fees and $3,494.75 for costs, for a total award of $184,231.75.

SO ORDERED.